ROLLINGWOOD HOMEOWNERS CORPORATION,
INC. *v.* CITY OF FLINT

1. MUNICIPAL CORPORATIONS—ORDINANCES—RESOLUTIONS.

A resolution by a city commission cannot operate as a *de facto* ordinance where the substance of city action requires the adoption of an ordinance.

2. STATUTES—HOUSING—DEEDS—CONTRACTS—LEASES.

The statute which provides that "all deeds, contracts, leases, or purchases entered into by [a city housing] commission shall be in the name of the city or village and shall be approved by the governing body of said city or village" is silent as to the appropriate vehicle for the city's approval (MCLA § 125.661).

3. MUNICIPAL CORPORATIONS—ORDINANCES—RESOLUTIONS.

The difference between a city action accomplished by ordinance and one accomplished by resolution lies in the nature of the act, not in its impact, and size and scope are not the proper yardsticks to determine whether an ordinance is required.

4. MUNICIPAL CORPORATIONS—HOUSING—TURNKEY PROJECT.

The approval of a "turnkey" housing project by a city commission was a determination to purchase a public housing facility (MCLA § 125.661).

5. MUNICIPAL CORPORATIONS—PROPERTY—PUBLIC USE—RESOLUTIONS.

The acquisition of property for public use is done by resolution in the city of Flint and the size of the project is of no moment (Flint City Charter §§ 199, 201).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 343 *et seq.*

[2, 4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 493 *et seq.*, 556–559.

6. MUNICIPAL CORPORATIONS—REAL ESTATE—REFERENDUM.

  A decision to acquire real estate is not inherently legislative; thus where statutory approval of a turnkey housing project was rendered by resolution, a manner contemplated by the city charter, no referendum was available (MCLA § 125.661; Flint City Charter §§ 199, 201).

Appeal from Court of Appeals, Division 2, Levin, P. J., and Holbrook and Bronson, JJ., reversing and remanding Genesee, Anthony J. Mansour, J. Submitted October 8, 1971. (No. 15 October Term 1971, Docket No. 53,019.) Decided November 9, 1971.

26 Mich App 1 reversed.

Complaint by Rollingwood Homeowners Corporation, Inc., and the residents of the Rollingwood Village area against the City of Flint, the Flint Housing Commission, Cruse-Loren Corporation and others for an injunction to prevent the defendants from constructing a public housing project on property adjacent to Rollingwood Village. Summary judgment for defendants. Plaintiffs appealed to the Court of Appeals. Reversed and remanded. Defendant Cruse-Loren Corporation appeals. The City of Flint and the Flint Housing Commission cross-appeal. Reversed.

*Lyndon J. Lattie,* for plaintiffs.

*Robert E. Weiss* and *Edward H. Devoe,* for defendants City of Flint and Flint Housing Commission.

T. E. BRENNAN, J.  The parties have filed an agreed statement of facts. It is as follows:

.

"NOW COME Plaintiffs above named by their attorney, Lyndon J. Lattie, Defendant City of Flint, a Michigan municipal corporation, and Defendant Flint Housing Commission, by their attorney, Herbert W. Hutchins, Assistant City Attorney, and Cruse-Loren Corporation, a Michigan corporation, by its attorneys, Parker and Nelson, and pursuant to G.C.R. 1963, 812.10, agree and stipulate that the following facts are all of the relevant facts in the case.

"Individual Plaintiffs are residents of the so-called Rollingwood area of the City of Flint, and the corporate Plaintiff is an association of residents of the same area. Defendant Cruse-Loren Corporation is a Michigan corporation and Defendant City of Flint is a Michigan municipal corporation, and Defendant Flint Housing Commissions [*sic*] is a municipal housing commission as defined in Act No. 18, Public Acts of 1933, Extra Session, as amended.* The other Defendants have been dismissed at various stages of the proceedings and were not involved in the final Summary Judgment from which Plaintiffs appealed.

"On July 27, 1964, the City of Flint enacted Ordinance No. 1788, creating the Flint Housing Commission, pursuant to Act No. 18, Public Acts of 1933, Extra Session, as amended, M.C.L. 125.651 et seq. Some time prior to May 9, 1968, Defendant Cruse-Loren Corporation negotiated with Defendant Flint Housing Commission and the Housing Assistance Administrator of the Department of Housing and Urban Development, both United States Government Agencies, for the construction of a project to be known as Branchwood East, labeled by the Housing Assistance Administrator and the Flint Housing Commission project, Michigan 9–9. The project is for 183 single family dwellings on property in the City of Flint, presently unplatted,

---

* MCLA § 125.651 *et seq.* (Stat Ann 1969 Rev § 5.3011 *et seq.*).— REPORTER.

but adjacent to various platted parcels known as Rollingwood Village in which the individual Plaintiffs reside. In addition to the 183 single family dwellings, a community building, so-called, will be constructed as part of the project.

"Prior to May 9, 1968, it became known that the Flint Housing Commission and Cruse-Loren Corporation would enter into a contract for the said project. On May 9, 1968 Plaintiffs filed a Complaint asking among other things a Temporary Restraining Order and a Preliminary Injunction blocking the further actions of all Defendants in regard to the project. On May 13, 1968 the Court issued a Temporary Restraining Order. On May 16, 1968 Defendant Cruse-Loren Corporation filed its Motion to Dissolve the Temporary Restraining Order and the hearing on the same was held on May 17, 1968.

"After hearing arguments of counsel on the 17th of May, 1968, the Temporary Restraining Order was dissolved by Order of the Court. Arguments on Plaintiffs' Order to Show Cause why a Temporary Injunction should not issue were heard on May 21, 1968 and May 23, 1968, and on May 24, 1968 the Court issued its opinion denying the injunctive relief requested by Plaintiffs. An Order Denying Injunctive Relief was filed on May 27, 1968.

"There followed a series of motions for summary judgment and motions for partial summary judgment, resulting in a Partial Summary Judgment in favor of the City of Flint on all issues except the question of approval of the contract between the Flint Housing Commission and Cruse-Loren Corporation by resolution of the Flint City Commission rather than by ordinance, and the alleged public nuisance which proportedly would be created by the completion of the project. The said Order Granting Partial Summary Judgment was entered on July 1, 1968 pursuant to a ruling of the Court on June 24, 1968 and earlier ruling dated May 24,

1968, by which the Court had disposed of all issues except the two above cited.

"On July 8, 1968, the City Commission of the City of Flint adopted a resolution approving the Flint Housing Commission contract with Cruse-Loren Corporation. Thereafter the contract was submitted to the Housing Assistance Administrator for his approval. That approval has not yet been granted.

"Within thirty days after the adoption of the resolution authorizing the contract, Plaintiffs caused to be filed with the Clerk of the City of Flint referendum petitions seeking a referendum election on the resolution approving the contract. The City Clerk has refused to take any action certifying or otherwise recognizing the validity of the petitions, acting on advice of the City Attorney to the effect that the resolution is not subject to referendum.

"Plaintiffs complain that numerous procedural requirements of the United States Housing Act of 1937, the United States Housing Act of 1949, and the Housing Act of 1954 have been violated, circumvented or ignored. No testimony was taken at any time during the proceedings as to these alleged violations, but it was stipulated in oral argument by the parties that the administration of these various Federal Acts rested with the Housing Assistance Administrator, to whose Chicago Regional Office the contract has been referred for approval. The Trial Court in its several rulings ruled that the actions of this Federal Agency were not subject to its review.

"The contract in question is a so-called 'turnkey' project, whereby the contract is negotiated directly between the sponsor or developer, in this case, Cruse-Loren Corporation, and the Public Housing Commission, in this case, the Flint Housing Commission, subject to the approval of the Housing Assistance Administrator. In such contracts the project is financed and paid for entirely by private

funds until actual delivery of the project or portions thereof ready for occupancy, at which time payment is made by the Flint Housing Commission after acceptance of the project or portions thereof by the Flint Housing Commission and approval of the Housing Assistance Administrator.

"Numerous other factual matters were asserted by Plaintiffs, and were either abandoned during the course of arguments on the several motions of the various parties, or were denied by sworn affidavits on file by Defendant, City of Flint and Defendant, Flint Housing Commission, and Defendant, Cruse-Loren Corporation, which sworn denials have gone uncontroverted. In summary, the four basic factual matters to which the parties stipulate and which give rise to the instant appeal are as follows:

"1. The Flint City Commission acted to approve execution of the contract between Cruse-Loren Corporation and the Flint Housing Commission by adoption of a resolution rather than by passage of an ordinance.

"2. The City of Flint, acting through its City Clerk refuses to certify the referendum petition circulated by Plaintiffs and their associates and delivered to the City Clerk for certification, requesting a referendum vote on the resolution approving execution of the contract.

"3. The Trial Court has refused to review the actions of the Housing Assistance Administrator and other officials of the Department of Housing and Urban Development in granting preliminary or tentative approval to the proposed project.

"4. The project is a so-called 'turnkey' project as defined in the 'Low-Rent Housing Manuel' [*sic*] promulgated by the Housing Assistance Administrator of the Department of Housing and Urban Development of the United States Government. No competitive bidding procedures were used in the negotiation of this contract and the execution of this contract.

"Dated this 17 day of February, A.D. 1969, in the City of Flint, Genesee County, Michigan."

On appeal, the Court of Appeals reversed and remanded, holding that the action of the city in approving the housing contract was, in effect, an ordinance, and therefore subject to referendum. The Court of Appeals quoted from *Parr* v. *Lansing City Clerk* (1968), 9 Mich App 719.

" 'As pointed out in 5 McQuillin, Municipal Corporations, § 15.02 at p 51, the difference between municipal ordinances and resolutions is in what the actions do, rather than in the manner in which they are passed. Resolutions are for implementing ministerial functions of government for short-term purposes. Ordinances are for establishing more permanent influences on the community itself. *Kalamazoo Municipal Utilities Association* v. *City of Kalamazoo* (1956), 345 Mich 318, 328. *By no stretch of logic can we find that a large-scale rezoning of property for the purpose of providing for public or quasi-public housing and involving the building of multimillion dollar housing complexes, largely with federal grants, is only a ministerial function of government.*

" 'Normally, when faced with the fact of a resolution passed by a city government in an area where an ordinance is required, this Court would respond by declaring the resolution void. 5 McQuillin, Municipal Corporations, § 16.10 at pp 173–177. In this case, however, we believe the better procedure is that followed by the trial court in allowing the resolution to stand as an ordinance, thus subject to the referendum procedures.' (Emphasis supplied.)"

We cannot approve of the reasoning. In *Schrier* v. *Kalamazoo* (1968), 380 Mich 626, we held the city's action ineffectual where legislative purposes were sought to be carried out by resolution.

With respect to ordinances, the Charter of the City of Flint provides:

"Section 128. Form. Each proposed ordinance shall be introduced in written or printed form. The enacting clause of each ordinance passed by the City Commission shall be, 'The City of Flint Ordains.' Said caption may be omitted when the city ordinances are published in book form or are revised and digested by authority of the Commission.

"Section 129. Adoption and Amendment. No ordinance shall be adopted by the Commission at the same meeting at which it is introduced. It may be adopted at any subsequent meeting. No ordinance shall be amended unless the section or sections that are intended to be amended shall be restated as amended.

"Section 130. Vote Necessary to Adopt. The adoption of any ordinance by the Commission shall require the concurrence of a majority of all members elect.

"Section 131. When to Take Effect. The time when any ordinance shall take effect shall be prescribed therein and, except for emergency ordinances, shall not be less than one week after its adoption. An ordinance imposing a penalty shall not take effect until one week after the date of its publication as herein provided. An emergency ordinance is hereby defined to be one necessary for the immediate preservation of the public peace, property, health or safety, or providing for the usual daily operation of a department or division of the city government. An emergency ordinance shall contain a statement of its urgency and may be given immediate effect.

"Section 132. Authentication. Immediately upon the adoption of an ordinance, the Mayor and the City Clerk shall sign the same and certify the date of its adoption.

"Section 133. Publication. Each ordinance shall be published once within one week after its adoption, in a newspaper printed and circulated within the city, and the Clerk shall certify on the record of ordinances, the date of publication and the name of the newspaper in which published. Such certificate shall be prima facie evidence that such ordinance has been legally published.

"Section 134. Authentication of Record. Each ordinance shall within one week after its final passage, be recorded in an indexed book marked, 'Ordinance Record,' and the record thereof authenticated by the signature of the Mayor and the Clerk; but failure so to record and authenticate it shall not invalidate it or suspend its operation."

The Charter also sets forth:

"Section 158. Power of Referendum. The electors shall have power to approve or reject at the polls any ordinance passed by the Commission, or submitted by the Commission to a vote of the electors, except an appropriation ordinance or an ordinance making the annual tax levy, such power being known as the referendum."

No such detailed requirements are found in the Charter governing resolutions. We note:

"Section 8. Powers of Commission. The commission shall be and constitute the legislative and governing body of the city and shall possess full power and authority to enact such ordinances and shall adopt such resolutions as it deem proper for the purpose of enforcing and exercising any or all of the powers possessed by the city.

"Section 13. Quorum. A majority of all the members elect shall constitute a quorum. The Commission shall act only by ordinance or resolution and may provide by ordinance for the compelling of the attendance of absent members."

There is nothing to suggest that a resolution of the City Commission might not be adopted by a majority of a quorum, rather than a majority of the members elect.

It follows that where the substance of city action requires the adoption of an ordinance, a resolution cannot operate as a *de facto* ordinance. The attempt to legislate by resolution is simply a nullity.

We would, therefore, be constrained to reverse, even if we agreed with the majority of the Court of Appeals panel that the approval of this housing project amounted to legislative action, requiring the adoption of an ordinance.

We do not, however, so conclude.

Section 11, MCLA § 125.651, *et seq.* (Stat Ann 1969 Rev § 5.3011 *et seq.*), provides:

"Sec. 11. All deeds, contracts, leases, or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village. Contracts for the purchase of necessary materials, leases with tenants and options need not be so approved."

The statute is silent as to the appropriate vehicle for the city's approval.

The Court of Appeals felt that an ordinance was required because of the size and scope of the housing project. Size and scope are not the proper yardsticks. There may be small ordinances and big resolutions; the difference lies in the nature of the act, not its impact.

The approval of the "turnkey" project was a determination to purchase a public housing facility.

In a similar vein, the Charter provides:

"Section 199. General Authority. Private Property, whether within or without the city limits, may be purchased, condemned or appropriated for public use for the purpose of opening, widening, alter-

ing or extending streets, alleys and avenues; for the construction of bridges, viaducts, grade separation, public buildings, parks, parkways, markets and market places, airports, sewers, drains and water courses, public and detention hospitals, public cemeteries, and sewage disposal; for water supply, water mains, water works, and for the protection thereof; or for any necessary, lawful, public use not specifically enumerated herein.

\*     \*     \*

"Section 201. Procedure. Whenever the City Commission shall have *decided* a public improvement to be necessary, and shall have *declared* that it deems it necessary to take private property, describing it, for such public improvement, designating it, and that the improvement is for the use or the benefit of the municipality, it shall *by resolution* direct the City Attorney to institute the necessary proceeding in behalf of the municipality, before the proper court, to carry out the object of the resolution in regard to taking private property by the city for public use." (Emphasis added.)

It is clear that the acquisition of property for public use is done by resolution in the City of Flint. The size of the project is of no moment; it can acquire an airport or open an alley by resolution.

There is nothing inherently legislative about a decision to acquire real estate. The statutory approval having been rendered in the manner contemplated by the City Charter, we conclude that no referendum was available.

Reversed. Costs to the defendant appellants.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, SWAINSON, and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.

T. G. KAVANAGH, J., concurred in the result.