KORASH v LIVONIA

1. CONSTITUTIONAL LAW—INITIATIVE—REFERENDUM—ORDINANCES.

There is no provision in the Michigan Constitution of 1963 reserving to the people the power of initiative and referendum with respect to local ordinances.

2. ZONING—STATUTES—CONSTRUCTION—HOME-RULE ACT—ZONING ENABLING ACT—CHARTERS—INITIATIVE.

The home-rule act provision for zoning must be read in conjunction with the zoning enabling act and, when so read, the exercise of a charter-authorized right to initiative is incompatible with the city authority to zone particularly where the city has set up a zoning authority, as the initiative makes no provision for: a tentative report by the planning commission, a public hearing by the commission, a final report by the commission, publication of notice of hearing, a public hearing by the city council and opportunity to file written objection to the proposed zoning change by affected property owners and to force a 3/4 vote of the city council.

3. MUNICIPAL CORPORATIONS—ZONING—INITIATIVE—ORDINANCES.

The initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of preparation and adoption of a zoning ordinance because the statute which confers upon the legislative body of the city the power to enact zoning laws prescribes the method by which they are to be adopted or amended; that the method of enactment is the measure of the power to enact; and that the initiative process does not conform to this method.

4. ZONING—STATUTES—ZONING ENABLING ACT.

Procedures outlined in the zoning enabling act must be strictly adhered to (MCLA 125.584).

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur 2d, Initiative and Referendum § 1 *et seq.*

[2, 3] 42 Am Jur 2d, Initiative and Referendum § 7.

[4, 5] 58 Am Jur, Zoning §§ 7, 9.

5. Zoning—Ordinances—Initiative—Zoning Enabling Act.

 An amendment to the zoning ordinance of a city by initiative, having been enacted by a procedure different from and contrary to the procedure required by the zoning enabling act, is invalid (MCLA 125.584).

Appeal from Court of Appeals, Division 1, Holbrook, P. J., and T. M. Burns and Danhof, JJ., affirming Wayne, Joseph A. Moynihan, J. Submitted November 10, 1972. (No. 9 November Term 1972, Docket No. 53,974.) Decided December 21, 1972.

38 Mich App 626 affirmed.

Complaint by Nat Korash and others against the City of Livonia and a building official of the City of Livonia for injunctive relief, mandamus, declaratory and summary judgments to have a city ordinance declared invalid. Judgment for plaintiffs. Defendants appealed to the Court of Appeals. Affirmed. Defendants appeal. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (by *Norman Hyman),* for plaintiffs.

*Harry C. Tatigian,* City Attorney, for defendants.

Williams, J. The question here is one of statutory construction. Did the Legislature intend to authorize home-rule cities to enact zoning ordinances both by legislative action and initiative, or just by legislation?

We adopt the succinct statement of facts by the Court of Appeals:

"Plaintiffs are the owners of approximately 15 acres of land in the City of Livonia. In March 1969, the property was zoned to allow multiple dwellings or

apartment houses. In March 1969, petitions were filed with the city clerk, pursuant to the charter of the City of Livonia, to amend the zoning ordinance of the City of Livonia. The initiatory petitions were found to be in proper form and to meet the requirements of the city charter of the defendant city, and subsequently, on September 29, 1969, at a special election the zoning amendment was approved. The effect of the zoning ordinance was to prohibit the multiple dwellings on the plaintiffs' property. Thereafter, plaintiffs commenced suit in the Wayne County Circuit Court requesting injunctive relief, mandamus, and declaratory and summary judgments. The trial judge found that the case involved purely a legal issue, with no facts being in dispute, and granted a declaratory judgment to the plaintiffs declaring the ordinance adopted by the initiatory petitions to be invalid. The trial court determined the instant case to be controlled by the decision of this Court in *Elliott v City of Clawson,* 21 Mich App 363 (1970)." 38 Mich App 626, 627–628 (1972).

The Court of Appeals affirmed also believing that the instant case was controlled by *Elliott.*

There are two statutes under scrutiny here. First the home-rule act, MCLA 117.4i(3)(6); MSA 5.2082(3)(6) which provides in part:

"Sec. 4-i. Each city may in its charter provide:

\* \* \*

"(3) *Zoning, annexation.* For the establishment of districts or zones within which the use of land and structures, the height, the area, the size and location of buildings and required open spaces for light and ventilation of such buildings and the density of population may be regulated by ordinance. Such regulations in 1 or more districts may differ from those in other districts. Whenever any city is incorporated, or whenever territory is annexed to any city incorporated pursuant to the provisions of this act, the then existing zoning regulations for the territory within the newly incorporated city or for the annexed territory, shall remain in full force and effect for a period of 2 years after incorpo-

ration or annexation, unless the legislative body of the city shall lawfully adopt other zoning regulations or ordinances.

* * *

"(6) *Initiative, referendum, recall.* For the initiative and referendum on all matters within the scope of its powers and for the recall of all of its officials."

Second, the zoning-enabling act, MCLA 125.584; MSA 5.2934 provides:

"Sec. 4. The legislative body of any city or village may provide by ordinance for the manner in which such regulations and boundaries of districts or zones shall be determined and enforced, or from time to time amended, supplemented or changed: Provided, however, That a public hearing shall be held before any such regulations shall become effective: And provided further, That not less than 15 days' notice of the time and place of such public hearing shall first be published in an official paper or a paper of general circulation in such city or village, and that not less than 15 days' notice of the time and place of such public hearing shall first be given by registered United States mail to each public utility company and to each railroad company owning or operating any public utility or railroad within the districts or zones affected, and a hearing be granted any person interested at the time and place specified. In cities having a population of 25,000 or more according to the last federal or state census, the legislative body may appoint a commission to recommend in the first instance the boundaries of districts and appropriate regulations to be enforced therein. Such commission shall thereupon make a tentative report and hold public hearings thereon at such times and places as the legislative body shall require before submitting its final report. In cities having a population of 25,000 or more according to the last federal or state census, said legislative body shall not in the first instance determine the boundaries of districts nor impose regulations until after the final report of a commission so appointed. In cities having a population of 25,000 or

more according to the last federal or state census, the hearing as above provided before the legislative body shall not take place until such final report of such commission has been received, nor shall the ordinance or maps be amended after they are adopted in the first instance until the proposed amendment has been submitted to such commission and it has made report thereon. In either case the legislative body may adopt such ordinance and maps with or without amendments, or refer same again to the commission for a further report. Where a city has a city plan commission or corresponding commission the legislative body may appoint such commission to perform the duties above specified. After the ordinance and maps have in the first instance been approved by the legislative body of a city or village, amendments or supplements thereto may be made from time to time as above provided, but in case a protest against a proposed amendment, supplement or change be presented, duly signed by the owners of 20 per centum or more of the frontage proposed to be altered, or by the owners of 20 per centum or more of the frontage immediately in the rear thereof, or by the owners of 20 per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by the 3/4 vote of such legislative body."

The question before us is whether these acts are mutually compatible or incompatible, and, if incompatible, which act controls. Resort to legislative history is illuminating.

In 1919, the City of Detroit enacted a zoning ordinance. The city's power to enact a zoning ordinance was challenged in *Clements v McCabe,* 210 Mich 207, 216 (1920). The Court held that:

"No such inherent zoning power exists or can be implied in this State from the mere incorporation of a city as such."

The Court went on to find that the power to zone

must be expressly authorized by state enabling legislation.

In response to that ruling, the Michigan Legislature enacted two acts—Acts 207 and 348 of Public Acts of 1921, approved respectively on May 17 and May 18, 1921. Act 207, the zoning enabling act, established the statutory zoning scheme in detail, including not only the municipal powers and limitations, but also the procedures to be followed.[1] Act 348 amended § 4 of the home-rule act with subsection (x)[2] to authorize cities to include the power to zone in their charters.

The power of cities to provide for *initiative* on all matters within the scope of their powers was also a creature of 1921 PA 348 § 4(m). Prior to this act, cities had only referendum powers.[3]

Thus, the home-rule act reference to zoning was enacted as a companion act to the zoning-enabling act to correct the deficiencies pointed out in *Clements*. The same home-rule act amendment authorizing zoning also authorized the initiative.

---

[1] The current zoning-enabling act procedures are identical to those set forth in 1921 PA 207 but for the requirement that notice must also be given to public utilities and railroads operating within the affected districts which was added by 1941 PA 306.

[2] 1921 PA 348 § 4(x) reads as follows:

"(x) For the establishment of districts or zones within which the use of land and structures, the height, the area, the size and location of buildings and required open spaces for light and ventilation of such buildings and the density of population may be regulated by ordinance: *Provided,* That such regulations in one or more districts may differ from those in other districts."

[3] 1909 PA 279 § 4(m) provided:

"Sec. 4. Each city may in its charter provide:

\* \* \*

"(m) For the referendum on all matters within the scope of its powers".

1929 PA 126 shifted the position of the initiative and referendum provision to § 4i(5). In 1939 PA 175, the Legislature renumbered this section to § 6, thus becoming its present citation § 4i(6).

There is no provision in the Constitution of 1963 reserving to the people the power of initiative and referendum with respect to local ordinances.

The construction urged upon this Court by the defendant city is that the home-rule act itself vests authority in the city to zone. Further, that the method of enactment of a zoning ordinance is not exclusively controlled by the procedures set forth in the zoning-enabling act. Thus, since zoning is within the scope of its power, the defendant city may use initiative as a procedural method to effectuate the grant of zoning authority.

In support of this position defendant relies upon *McKinley v City of Fraser,* 366 Mich 104, 105–106 (1962), particularly:

"In our view the quoted general rule cannot be applied to the case before us since the present language of section 4i of the home-rule act, likewise that of the applicable charter provision of the defendant city, unequivocally and unitedly authorize initiation of *any* kind or type of ordinance." (Emphasis original opinion.)

The sweep of this language is unlimited standing by itself. Our opinion in *McKinley* makes clear that is exactly what was meant. However, we there expressed one *caveat* when we said:

"If the electors of Fraser wish to modify or change the broad power of initiative so granted, they may proceed to amend or repeal as indicated. They voted the power into their municipal law. They alone—*unless the legislature in the meantime ordains otherwise*—may change or modify such power." 366 Mich 104, 106–107. (Emphasis added.)

The home-rule act itself is to the same effect. MCLA 117.36; MSA 5.2116. The statute provides:

"Sec. 36. No provision of any city charter shall conflict with or contravene the provisions of any general law of the state."

In *Amberg v Welsh,* 325 Mich 285 (1949), this Court ruled that § 4i(6) powers of the home-rule act must be subordinated to the general laws of the state. That case dealt with the recall portion of § 4i(6). The question was whether the recall provisions of the charter as authorized by § 4i(6) or those of the state law should prevail. The Court stated:

"The provisions of PA 1913, No 325, in many respects differ from the recall provisions in the Grand Rapids charter. We have repeatedly held that the provisions of a general statute are paramount, notwithstanding that the provisions of a home-rule city charter on the same subject may differ. 'Where a city charter is silent upon a subject or different from the pertinent statutory provisions, the statute controls and must be read into the charter.' *City of Hazel Park v Municipal Finance Comm.* (syllabus), 317 Mich 582 [1947], and the many cases cited therein." 325 Mich 285, 293.

As a consequence the home-rule act provision for zoning must be read in conjunction with the zoning-enabling act. When so read, the question is whether the exercise of the charter-authorized right to initiative is compatible with the city authority to zone. The answer is it is not, particularly where the city has set up a zoning authority.[4]

---

[4] We emphasize that the holding of this case is limited to the use of the *initiative* as a means to amend or enact zoning laws. The issue of whether a referendatory procedure is proper is not before us.

The defendant city relies heavily on the recent case of *Fort Collins v Dooney,* — Colo —; 496 P2d 316 (1972) in which the Colorado Supreme Court upheld the applicability of charter referendum provisions of a home-rule city to amendatory zoning ordinances. The case is inapplicable to the case at bar since *Dooney* is a referendum case and sheds no light on the validity of an initiatory procedure for amending a zoning law.

Indeed, initiative and referendum have quite different consequences when considered in the context of zoning laws. As was stated in *Johnston v City of Claremont,* 49 Cal 2d 826, 836–837; 323 P2d 71, 77 (1958):

"[N]o such objection exists with respect to subjecting a zoning

The initiative makes no provision that (1) a tentative report on the proposed ordinance be made by the Livonia Planning Commission; (2) a public hearing be held by the Livonia Planning Commission; (3) a final report be made by the Livonia Planning Commission; (4) publication of notice of hearing be made; (5) a public hearing be held by the Livonia City Council; and (6) affected property owners have the opportunity to file a written objection to the proposed zoning change and to force a 3/4 vote of the Livonia City Council.

As was stated by the California Supreme Court in *Hurst v City of Burlingame,* 207 Cal 134, 141; 277 P 308, 311 (1929):

"The initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance."[5]

And in *Laguna Beach Taxpayers' Assn v City Council of Laguna Beach,* 187 Cal App 2d 412, 415; 9 Cal Rptr 775, 777 (1960), the Court, after setting forth the rule of *Hurst* stated:

"The reason for this rule is that the statute which confers upon the legislative body of the city the power to enact zoning laws prescribes the method by which they are to be adopted or amended: that the method of enactment is the measure of the power to enact: and

ordinance to the referendum, since the procedural steps prescribed by the Legislature in such a case must be taken *before* the adoption of the ordinance. On the other hand, the objection would apply where a zoning ordinance was adopted by a general law city by means of an initiative measure without compliance with the general law relating to zoning." (Emphasis in original opinion.)

[5] For other cases dealing with the question of the validity of the *initiative* as a tool to amend or enact zoning ordinances see *Elliott v City of Clawson,* 21 Mich App 363, 367–374 (1970). See also *Smith v Livingston Twp,* 106 NJ Super 444; 256 A2d 85 (1969) aff'd 54 NJ 525; 257 A2d 698 (1969). By contrast as to how a *referendum* is handled see *State ex rel Wahlmann v Reim,* 445 SW2d 336, 338–339 (Mo, 1969).

that the initiative process as used in this case does not conform to this method."

Indeed, this Court has consistently held that the procedures outlined in the zoning-enabling act must be strictly adhered to. *Krajenke Buick Sales v Hamtramck City Engineer,* 322 Mich 250 (1948); *Stevens v Madison Heights,* 358 Mich 90 (1959). As we stated in *Stevens:*

"The statute spells out a certain procedure that must be followed to enact a zoning ordinance; this procedure admittedly was not followed by the city in this case; and therefore the ordinance in question is invalid." 358 Mich 90, 93.

Therefore, the amendment to the ordinance, having been enacted by a procedure different from and contrary to the procedure required by the zoning-enabling act, is invalid.

The decision of the Court of Appeals is affirmed. A public question being involved, no costs will be allowed.

T. M. KAVANAGH, C. J., and ADAMS, T. E. BRENNAN, T. G. KAVANAGH, and SWAINSON, JJ., concurred with WILLIAMS, J.

BLACK, J., did not sit in this case.