## WEST v CITY OF PORTAGE

### Opinion of the Court

1. Zoning—Amendments—Legislative Acts—Administrative Acts.

   A change in the zoning of particular property, although in form and in traditional analysis thought to be legislative action, is in substance an administrative, not a legislative, act.

2. Zoning—Municipal Corporations—Ordinances—Amendments—Referendum.

   The right of referendum extends only to legislative acts, and an amendment to a city zoning ordinance changing the zoning of particular property, being administrative in nature, is not subject to a referendary vote of the electors of the city.

3. Municipal Corporations—Legislative Bodies—Governmental Functions.

   Legislative bodies of local units of government, under the constitution and by act of the Legislature, frequently exercise administrative, executive, and sometimes even judicial functions.

4. Statutes—Initiative—Referendum—Voting.

   The words "initiative" and "referendum" have a legislative connotation and are themselves an implicit limitation on the matters that may properly be the subject of an initiative or referendum.

5. Statutes—Initiative—Referendum—Home-Rule Act.

   The rights of initiative and referendum under the home-rule act are limited to legislative measures (MCLA 117.4i[6]).

6. Zoning—Amendment—Administrative Acts.

   Zoning decisions may be either administrative or legislative depending upon the nature of the act; the enactment of a comprehensive plan and zoning code, a policy-making decision, is legislative, but an amendment reclassifying particular land,

References for Points in Headnotes

[1-3, 6] 58 Am Jur, Zoning § 169.

[4, 5, 7-10] 58 Am Jur, Zoning § 9.

  42 Am Jur 2d, Initiative and Referendum §§ 5, 6.

essentially an adjudication of the rights of proponents and opponents of the proposed zoning change, constitutes an administrative or adjudicatory act.

### Opinion Concurring in Part

T. M. Kavanagh, C. J., and Swainson and Williams, JJ.

7. Zoning—Municipal Corporations—City Charter—Referendum —Zoning-Enabling Act—Ordinances.

*The exercise of a city's charter-authorized right to referendum is compatible with a city's zoning-enabling act authority to zone, because the act's procedural steps have already been followed with respect to the amendatory zoning ordinance prior to the point in time when referendum becomes available; the aim of referendum is retention of the status quo existing prior to legislative adoption of the amendatory zoning ordinance, and the status quo is, again, achieved through compliance with the statutory zoning enactment procedures; as a result, referendum's aim of retention of the status quo does not conflict with the zoning-enabling act's aim of guaranteeing certain procedural steps prior to the passage of* new *zoning legislation (MCLA 117.4i[3][6], 125.584; Portage Charter, § 5.8).*

8. Statutes—Referendum—Legislature—Appeal and Error.

*The Legislature has recognized that the role of referendum is an important one in our democratic society; where there is no contrary statutory compulsion, the Michigan Supreme Court will not infringe upon the Legislature's provision for that procedure.*

9. Zoning—Municipal Corporations—City Charter—Referendum —Home-Rule Act—Zoning-Enabling Act.

*A city's charter-established right to referendum as authorized by the home-rule act is valid because there is no statutory conflict with the provisions of the zoning-enabling act; therefore, landowners in the city had a legal right to petition for referendary proceedings (MCLA 117.4i[3][6], 125.584).*

10. Zoning—Municipal Corporations—City Clerk—Referendum— Initiative.

*A city clerk could not legally, on the basis of a petition combining both a referendum and an initiative, put the requested referendum to the people because the second half of the petition requested a zoning initiative which was held illegal in a decision of the Michigan Supreme Court and the clerk could not put a half illegal proposition to the people nor could he attempt*

*to reform the proposition as he has no legislated authority to reform a petition and, assuming he did have such power, he would not in this instance be able to accurately reflect the intention of the petition signers to reform it; therefore, the referendary petition was invalid.*

Appeal from Court of Appeals, Division 3, Danhof, P. J., and R. B. Burns and J. H. Gillis, JJ., affirming Kalamazoo, Donald T. Anderson, J. Submitted March 12, 1974. (No. 4 March Term 1974, Docket No. 54,764.) Decided September 6, 1974.

Complaint by Wayne West and others against the City of Portage to enjoin the issuance of building permits for certain property, to require defendant to accept plaintiffs' petitions and hold a referendum thereof if a certain zoning ordinance is not repealed, to require defendant to accept plaintiffs' initiative request to rezone a certain area and to hold hearings thereon if the commission does not pass the new zoning proposal, and to determine defendant's ordinance rezoning that property invalid. Summary judgment for defendant. Plaintiffs appealed to the Court of Appeals. Village Green Properties, Inc. added as a party defendant. Affirmed. Plaintiffs appeal. Affirmed.

*Troff, Lilly, Piatt, File & Doyle* (by *Richard G. Schreur),* for plaintiffs.

*John J. Peters,* for defendant City of Portage.

*Early, Starbuck & Lennon,* for defendant Village Green Properties, Inc.

LEVIN, J. The issue is whether an amendment to a city zoning ordinance changing the zoning of particular property is subject to a referendary vote of the electors of the city.

We hold that such a change in zoning is not subject to referendum. The right of referendum extends only to legislative acts. A change in the zoning of particular property, although in form (amendment of a zoning ordinance) and in traditional analysis thought to be legislative action, is in substance an administrative, not legislative, act.

I

It is first necessary to reconsider this Court's holding in *McKinley v City of Fraser,* 366 Mich 104, 105; 114 NW2d 341 (1962), for there the Court rejected the view that the provisions in the home-rule act for "initiation of municipal ordinances are applicable only to acts 'which are legislative in character'."

The home-rule act provides:

"Sec. 4i. Each city may in its charter provide * * *
(6) For the initiative and referendum on all matters within the scope of its powers and for the recall of all of its officials."

The *McKinley* Court declared, without further explanation, that the "language" of both the home-rule act and the charter of the defendant city "unequivocally and unitedly authorize initiation of *any* kind or type of ordinance". (Emphasis by the Court.)

The Court's statement that the "language" of the home-rule act authorizes initiative (and by like token a referendum)[1] "of any kind or type of ordinance" seems to have been based on the "on all matters within the scope of its power" clause.

---

[1] Although *McKinley* dealt with an ordinance initiated by the people, the basis of the Court's holding makes it equally applicable to a referendum.

The Court appears to have ignored what was most essential to the proper consideration of the question before it. Nowhere in the Court's opinion is there any reference to or discussion of the history or meaning of the words "initiative" and "referendum".

There was no need to spell out in the home-rule act in so many words that the rights of initiative and referendum apply only to legislative acts. That was implicit in the use of the words, ignored by the *McKinley* Court, "initiative" and "referendum".

During the latter part of the 19th century, distrust of legislatures reached such proportions that many states, including Michigan, amended their constitutions to provide for the initiative and referendum. The people could thereby initiate needed laws which the Legislature had not been bestirred to enact and could reject unpopular laws which the Legislature, perhaps at the instance of some special interest, had improvidently enacted.

The amendment to the 1908 Constitution, reserving to the people in respect of the Legislature the rights of initiative and referendum, explicitly provided that those rights related to "laws" and "acts" which are legislative *("legislative* measures, resolutions and laws").[2] (Emphasis supplied.)

---

[2] "[T]he people reserve to themselves the power to propose *legislative* measures, resolutions and *laws;* to enact or reject the same at the polls independently of the legislature; and to approve or reject at the polls any *act* passed by the legislature, except acts making appropriations for State institutions and to meet deficiencies in State funds * * * *Provided,* That no *law* shall be enacted by the initiative that could not under this constitution be enacted by the legislature." (Emphasis supplied.) Const 1908, art 5, § 1, as amended by vote of the people at election April, 1913. See 1913 PA CR No. 4.

The present Constitution rephrases as follows:

"The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. The power of initiative extends only to laws which the legislature may

What was carefully spelled out in the Constitution was left without explicit definition and limitation when the rights of initiative and referendum were conferred on home-rule cities. The home-rule act, enacted in 1909, some four years before rights of initiative and referendum were reserved to the people in respect to the Legislature, provided simply, in language which has been retained without substantive change to the present, that a city's charter may provide "for the referendum on all matters within the scope of its powers".[3] By amendment the words "initiative and" were added.[4]

The question whether the rights of initiative and referendum extend to nonlegislative acts arises most frequently with reference to acts of municipalities or other local units of government. This is because legislatures exercise, with relatively few exceptions such as those spelled out in Michigan's Constitution,[5] only legislative power,[6] while, under the constitution of this and other states and by act of the Legislature, legislative bodies of local units of government (cities, townships, counties) frequently exercise administrative, executive and sometimes even judicial functions.[7]

enact under this constitution. The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds." Const 1963, art 2, § 9.

[3] 1909 PA 279, § 4(m). Now MCLA 117.4i; MSA 5.2082.

[4] 1913 PA 5, p 14. *See,* for earlier revision, 1911 PA 203, p 353. Now MCLA 117.4i; MSA 5.2082.

[5] *See, e.g.,* art 6, § 25, removal of judge from office; art 11, § 7, impeachment of civil officers; art 5, § 26, inability of Governor.

[6] Const 1963, art 4, § 1.

[7] *See* authorities discussed in *Kropf v Sterling Heights,* 391 Mich 139, 165–166, n 2; 215 NW2d 179 (1974) (LEVIN, J., concurring). *Compare Wayne County Jail Inmates v Wayne County Sheriff,* 391 Mich 359, 364; 216 NW2d 910 (1974), where we observed:

"While it is true that local boards of commissioners have legislative powers in some matters, in carrying out the duties imposed upon

It is in that context (action taken by a local unit of government) that many courts have drawn a distinction between administrative and legislative acts, limiting initiatory and referendary rights to those matters which are properly legislative in character:

"Actions of a legislative body which are administrative or executive in nature are generally not subject to initiative and referendum. The question arises generally in connection with municipal assemblies whose enactments may be either legislative or executive. Resolutions and ordinances of municipal bodies, if not in fact legislative, are not subject to referendum." 42 Am Jur 2d, Initiative and Referendum, § 11, p 659.

"Another major limitation on initiative and referendum arises from the distinction drawn by the courts between administrative and legislative action. Only legislative action is subject to initiative and referendum. This exception applies only to actions of local governments in which the administrative and legislative functions are combined in one body. The courts look to the substance of the matters passed by the governing units and not to the form in which they are passed. An 'ordinance' might be either legislative or administrative." Note, *Limitations on Initiative and Referendum*, 3 Stan L Rev 497, 502–503 (1951).[8]

In *Rollingwood Homeowners Corp, Inc v City of Flint*, 386 Mich 258, 268; 191 NW2d 325 (1971), this Court recognized that all actions of a local legislative body are not necessarily legislative: "There is nothing inherently legislative about a decision to acquire real estate."[9]

them by the Legislature their function is executive or administrative, and they have no legislative function in the premises."

[8] *See, generally,* Anno: *Character or Subject Matter of Ordinance Within Operation of Initiative and Referendum Provisions,* 122 ALR 769 (1939).

[9] The question in *Rollingwood* was whether there was a right of referendum on a proposed public housing project. The project had been approved by resolution of the governing body. The Court rea-

There are statements in cases decided in and around the time the home-rule act was adopted which support the view that the words "initiative" and "referendum" have a legislative connotation:

"[T]he electors by their vote at the ballot-box directly exercise *legislative power." In re Andrew Pfahler,* 150 Cal 71, 76; 88 P 270; 11 LRA (NS) 1092; 11 Ann Cas 911 (1906). (Emphasis supplied.)

"The people have simply reserved to themselves a larger share of *legislative power* * * * ." *Kadderly v Portland,* 44 Or 118, 145; 74 P 710 (1903). (Emphasis supplied.)

In 1910, the question whether the initiative and referendum extend to administrative acts of local units of government arose in *Brazell v Zeigler,* 26 Okla 826; 110 P 1052 (1910), where the Court held that the action of the board of county commissioners in ordering its clerk to advertise for bids for the construction of a bridge was "administrative, and not legislative, and for that reason the referendum could not be invoked against it". In 1915, the Supreme Court of California concluded that acquisition of land by a city for the construction of a city hall *(cf.* fn 9) was legislative action, and therefore subject to the referendum. *Hopping v Council of Richmond,* 170 Cal 605; 150 P 977 (1915).

We hold that the words "initiative" and "referendum" are themselves an implicit limitation on the matters that may properly be the subject of an initiative or referendum, and that the Legislature

---

soned that construction of a "turnkey" project was a purchase. It pointed out that property could be purchased by resolution, that the project had been authorized by resolution, referred to the fact that the right of referendum, as spelled out in the city's charter, applies only to ordinances, and concluded that no referendum was available, "[t]he statutory approval having been rendered in the manner contemplated by the City Charter".

did not in 1909 intend to confer on the electors of home-rule cities the power to vote on questions not truly legislative in character.

The unlimited sweep of *McKinley* would authorize an initiative or referendum on the most mundane executive matter: whether a particular secretary or clerk is to be hired or terminated, whether the garbage is to be collected on Monday or Tuesday, and whether male municipal employees may wear short-sleeved shirts in the summer time and female employees may wear pantsuits at any time.

We recently had occasion to observe that, "for practical reasons, the people's power or right of referendum has usually been subjected to certain constitutional restrictions."[10] For reasons historical and practical and in implementation of the apparent intent of the Legislature, the rights of initiative and referendum under the home-rule act are limited to legislative measures.

It is the fate of all ideas, good and bad, that someone will seek to extend them to an extreme beyond purpose and reason. It is the duty of the courts, in their area of responsibility, to guard against that tendency, and to confine this important reserved right of the people to its legitimate and proper scope lest, through misuse, it fall into disrepute.

## II

Other state courts have, indeed, as my colleagues point out, held that zoning questions may be the subject of a referendum.

A respected authority states, however, that, in general, a distinction has been drawn between a

---

[10] *Board of County Road Commissioners v Board of State Canvassers,* 391 Mich 666, 671; 218 NW2d 144 (1974), quoting *Anno: Referendum—Laws Excepted,* 100 ALR2d 314, 315.

comprehensive zoning ordinance and an amendment of a zoning ordinance, the former being subject to referendum and the latter not:

"Some states provide for legislation through referendum. The question arises as to the propriety of enacting zoning ordinances or amendments thereto by such means. The general rule is that such referendum provisions apply only to the question of whether a comprehensive zoning ordinance should be enacted, i.e., whether the legislative body is to be permitted to zone the community at all and has no reference to the detailed manner in which it is to be zoned nor to the modifications or amendments thereof." 1 Rathkopf, *The Law of Zoning and Planning,* ch 27, § 3, p 31.

The courts which have reached that conclusion have advanced various rationales.[11] We reach that

[11] A Minnesota zoning enabling act provided for the adoption of a comprehensive ordinance by the vote of a simple majority of the local governing body. Subsequent alterations required the approval of "a two-thirds vote of all the members of the governing body". The act further permitted a referendum on "the question of permitting the council to zone the city".

The Minnesota Supreme Court concluded that it was the intention of the Legislature to permit a referendum on the question whether the city should be zoned at all, that safeguard having been provided since a comprehensive zoning ordinance could be adopted by a simple majority of the governing body, but that it was not intended to permit a referendum as to an alteration where the safeguard of a 2/3 vote was provided. *Minneapolis-Honeywell Regulator Co v Nadasdy,* 247 Minn 159; 76 NW2d 670 (1956).

In Michigan the initial adoption of a zoning ordinance may likewise be approved by a simple majority of the governing body. However, "[a]fter the ordinance and maps have in the first instance been approved by the legislative body", an amendment shall not be passed "except by the three-fourths vote of such legislative body" in the event of a protest of the proposed amendment signed by "20 per centum or more" of the owners of the frontage proposed to be altered, directly opposite or immediately to the rear. MCLA 125.584; MSA 5.2934.

In the instant case, sufficient signatures were obtained to invoke the extraordinary majority requirements of the city and village zoning-enabling act. The change of zoning classification of the three properties involved in the March 2 ordinance were approved by the Portage City Council by votes of 7-0, 6-1, 6-1. It is arguable that when the Legislature authorized adoption of a comprehensive zoning

conclusion on the ground that a zoning amendment affecting particular property is an administrative, not a legislative, act.

There is increasing awareness that "[z]oning decisions may be either administrative or legislative depending upon the nature of the act", and that while the enactment of a comprehensive plan and zoning code, a policy making decision, is legislative, an amendment reclassifying particular land, essentially an adjudication of the rights of proponents and opponents of the proposed zoning change, constitutes an administrative or adjudicatory act. *Fleming v Tacoma*, 81 Wash 2d 292, 298–299; 502 P2d 327, 331 (1972).

The Supreme Court of Oregon has said that it would ignore "reality to rigidly view all zoning decisions by local governing bodies as legislative acts. * * * Ordinances laying down general policies without regard to a specific piece of property are usually an exercise of legislative authority * * * . On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial[12] authority * * * ." *Fasano v Board of*

ordinance by a simple majority and provided the safeguard of a super majority for amendments to the ordinance in the event of protest by certain affected property owners, it intended thereby to substitute that safeguard for any referendary right which might otherwise obtain.

In *Elkind v New Rochelle*, 5 Misc 2d 296, 301; 163 NYS2d 870, 876–877 (1957), aff'd 5 NY2d 836; 181 NYS2d 509; 155 NE2d 404 (1958), the Court reasoned that New York's zoning enabling laws "require that any zoning law shall be based on a well-considered and comprehensive plan by means of which the land in the municipality may be used for purposes for which it is best suited and all reasonably necessary uses may be provided for. If, after the adoption of a zoning ordinance, meeting these requirements, some of its provisions may be deleted by a referendum of the electors, the comprehensiveness mandated by the Legislature could well be destroyed. Essential uses, such as for churches and schools, could be barred from the municipalities."

*See, also, Hancock v Rouse*, 437 SW2d 1 (Tex Civ App, 1969).

[12] Professor Robert H. Freilich begins a comment on the *Fasano*

*County Commissioners of Washington County,* 264
Or 574, 580–581; 507 P2d 23, 26 (1973).

Professor Robert H. Freilich, an authority on
urban law, commenting on *Fasano* writes:

> "[T]his decision finally provides a rational basis for
> judicial review of zoning by holding a zoning board's
> actions in rezoning specific pieces of property is a
> *judicial* rather than a legislative function. * * *
>
> "There can be no dispute that the original passage of
> comprehensive plans and zoning ordinances is a legisla-
> tive function since these actions are classified as gen-
> eral policy decisions which apply to the entire commu-
> nity. However, a zoning amendment may be differenti-
> ated on the basis that such a determination is narrowly
> confined to a particular piece of property and the use
> will generally affect only a small number of people,
> thus approximating an administrative exercise." Frei-
> lich, *Fasano v Board of County Commissioners of Wash-
> ington County: Is Rezoning an Administrative or Legis-
> lative Function?,* 6 Urban Lawyer, pp vii, ix (1974).
> (Emphasis in the original.)

The Nevada Supreme Court has ruled that once
zoning policy has been determined, a reclassifica-
tion of particular areas is not subject to initiative
or referendum, "that this plebiscite applies only to
'legislation' and that administrative acts are ex-
cepted from initiative and referendum":

> "A municipal ordinance may be either legislative or
> administrative. * * * This legislative-administrative di-
> chotomy is often vague, but it is this very vagueness
> which has given the courts considerable leeway in
> balancing two competing interests: that of protecting

case with the following footnote:
"2. The characterization of 'judicial' is that of the Oregon supreme
court. Ordinarily actions of a legislative body which address a specific
set of facts and issuance of a license, approval or permit are denomi-
nated 'quasi-judicial,' or 'administrative.' " Freilich, *Fasano v Board
of County Commissioners of Washington County: Is Rezoning an
Administrative or Legislative Function",* 6 Urban Lawyer vii (1974).

government from unwarranted harrassment and the equal interest in protecting benefits to be won through direct legislation. See, generally, Comment, Stan. L. Rev. 497 (1951).

"We think that whether or not the citizens of a state wish to embark upon a policy of zoning for the purpose of regulating and restricting the construction and use of buildings within fixed areas is a legislative matter subject to referendum. But when, as in the present case, such policy has been determined and the changing of such areas, or the granting of exceptions has been committed to the planning commission and the city council in order to secure the uniformity necessary to the accomplishment of the purposes of the comprehensive zoning ordinance, such action is administrative and not referable. *Cf. Kelley v John,* 162 Neb 319, 75 NW2d 713, 716 (1956)." *Forman v Eagle Thrifty Drugs & Markets, Inc,* 89 Nev 533, 537–538; 516 P2d 1234, 1236–1237 (1973).

In *Kelley v John,* 162 Neb 319; 75 NW2d 713, 714–715 (1956), the Nebraska Supreme Court declared in the syllabus by the Court:

"An ordinance changing the classification of property from residential to business use after the adoption of a comprehensive zoning plan is an administrative or executive matter, and not subject to referendum laws applicable to municipalities."

The Nebraska Court suggested as a test for distinguishing between what is legislative and administrative or executive, "whether the action taken was one making a law, or executing or administering a law already in existence". Applying this test, the Court concluded that in adopting an ordinance rezoning property from a residential to a business use the legislative body was simply "carrying out the purposes of the comprehensive zoning ordinance" and "[i]n putting this ordinance into effect, the city council acts administratively".

The Supreme Court of Utah reached the same conclusion in *Bird v Sorenson,* 16 Utah 2d 1–2; 394 P2d 808 (1964):

"The City of Washington Terrace has in effect a master zoning plan ordinance. Subsequent to its adoption, the City Council passed an ordinance changing the classification of certain property from residential to commercial use. * * *

"The ordinance in question was passed after the requested change had been studied and recommended by the planning commission and after a public hearing had been held. The determinative question is whether or not the action of the City Council was administrative or legislative. If the former, it is not subject to referendum. We so hold, based upon logic and prior decisions of this court. If each change in a zoning classification were to be submitted to a vote of the city electors, any master plan would be rendered inoperative. Such changes are administrative acts implementing the comprehensive plan and adjusting it to current conditions."

The City of Portage (population 1970—33,590) was incorporated as a home-rule city on December 31, 1963. It operated under the former township zoning until December 31, 1965, when a comprehensive zoning ordinance was adopted. Within 8-1/4 years (as of March 14, 1974), the zoning map of this relatively small community was changed 128 times.[13] We are not informed of the number of proposed changes on individual grounds which were considered and rejected during that period of time.

"When a local legislative body decides to grant a change in zoning, it has in fact determined the merits of the individual grounds. So, too, unless the local body in fact rejects all applications for a change in zoning without reaching the merits, when it denies an applica-

---

[13] 1966—21; 1967—9; 1968—20; 1969—20; 1970—9; 1971—10; 1972—16; 1973—20; 1974—3.

tion after entertaining the merits, it also in fact decides the merits of the individual grounds advanced.

"Such a determination on individual grounds is administrative, not legislative." *Kropf v Sterling Heights,* 391 Mich 139, 169; 215 NW2d 179 (1974) (Levin, J., concurring).

We hold that the amendment adopted by the city commission of the City of Portage rezoning 150 acres of land from single-family residential into sections allowing community business, multiple family and office service was an administrative, not a legislative, act and, therefore, not subject to referendum and on that basis affirm the judgment of the trial court and the Court of Appeals[14] in dismissing plaintiffs' complaint.

T. G. Kavanagh and J. W. Fitzgerald, JJ., concurred with Levin, J.

M. S. Coleman, J., concurred in the result.

Williams, J. *(concurring in part).* This case raises two issues about the availability of a city zoning referendum. First of all, is there any right to referendum a zoning ordinance in a home-rule city? Second, is the referendary petition valid in the instant case? The petition combines both a referendum and an initiative. (We previously held that in home-rule cities there is no right to zone by initiative. *Korash v Livonia,* 388 Mich 737; 202 NW2d 803 [1972].)

We hold there is a right to referendum a zoning ordinance but that the instant petition is fatally defective because it attempts to combine a zoning referendum and an initiative.

[14] The trial court predicated its holding on *Elliott v Clawson,* 21 Mich App 363; 175 NW2d 821 (1970); the Court of Appeals affirmed in an unpublished per curiam opinion on the same ground.

## I —FACTS

On March 2, 1971, codefendant Portage City Commission adopted an ordinance to re-zone property owned by codefendant Village Green Properties, Inc. Proper notice and hearing procedures were complied with and the ordinance was passed by more than a three-quarters vote of the Commission. Portage is a home-rule city having a population exceeding 25,000 persons.

Plaintiffs, adjacent landowners, protested and filed a petition with the Portage City Clerk on March 26, 1971, seeking under Portage City Charter §§ 5.8–5.13, repeal or, in the alternative, referendum. The petition also requested Commission passage of, or, in the alternative, initiative passage of an altogether new zoning proposal affecting approximately 80 of the 150 acres rezoned on March 2, 1971. At the subsequent Commission meeting on March 30, 1971, none of the citizens' requested actions were taken nor were steps taken to put these initiative and referendum requests to a public vote.

Plaintiffs filed suit on April 9, 1971. On March 6, 1972, summary judgment was granted defendants on two counts (no right to referendum and no right to initiative). One count (unreasonableness of ordinance) was dismissed by stipulation. The Court of Appeals affirmed on March 2, 1973. (Docket No. 13864 [unreported]). We granted leave on June 21, 1973. 389 Mich 810 (1973).

## II —RIGHT TO REFERENDUM

As in *Korash, supra,* which involved the question whether or not initiative is permissible with respect to zoning ordinances, the instant question whether or not there is a right to referendum is

purely a question of statutory construction. Did the Legislature intend to authorize home-rule cities to repeal zoning ordinances both by ordinance and referendum, or, just by ordinance?

The two statutes under scrutiny here are the same two statutes involved in *Korash.* First the home-rule act, MCLA 117.4i(3)(6); MSA 5.2082(3)(6) which provides in part:

"Sec. 4i. Each city may in its charter provide:

\* \* \*

"(3) For the establishment of districts or zones within which the use of land and structures, the height, the area, the size and location of buildings and required open spaces for light and ventilation of such buildings and the density of population may be regulated by ordinance. Such regulations in 1 or more districts may differ from those in other districts.

\* \* \*

"(6) For the initiative and referendum on all matters within the scope of its powers and for the recall of all of its officials;"

Second, the city or village zoning-enabling act, MCLA 125.584; MSA 5.2934 provides:

"Sec. 4. The legislative body of any city or village may provide by ordinance for the manner in which such regulations and boundaries of districts or zones shall be determined and enforced, or from time to time amended, supplemented or changed: Provided, however, That a public hearing shall be held before any such regulations shall become effective: And provided further, That not less than 15 days' notice of the time and place of such public hearing shall first be published in an official paper or a paper of general circulation in such city or village, and that not less than 15 days' notice of the time and place of such public hearing shall first be given by registered United States mail to each public utility company and to each railroad company

owning or operating any public utility or railroad within the districts or zones affected, and a hearing be granted any person interested at the time and place specified. In cities having a population of 25,000 or more according to the last federal or state census, the legislative body may appoint a commission to recommend in the first instance the boundaries of districts and appropriate regulations to be enforced therein. Such commission shall thereupon make a tentative report and hold public hearings thereon at such times and places as the legislative body shall require before submitting its final report. In cities having a population of 25,000 or more according to the last federal or state census, said legislative body shall not in the first instance determine the boundaries of districts nor impose regulations until after the final report of a commission so appointed. In cities having a population of 25,000 or more according to the last federal or state census, the hearing as above provided before the legislative body shall not take place until such final report of such commission has been received, nor shall the ordinance or maps be amended after they are adopted in the first instance until the proposed amendment has been submitted to such commission and it has made report thereon. In either case the legislative body may adopt such ordinance and maps with or without amendments, or refer same again to the commission for a further report. Where a city has a city plan commission or corresponding commission the legislative body may appoint such commission to perform the duties above specified. After the ordinance and maps have in the first instance been approved by the legislative body of a city or village, amendments or supplements thereto may be made from time to time as above provided, but in case a protest against a proposed amendment, supplement or change be presented, duly signed by the owners of 20 per centum or more of the frontage proposed to be altered, or by the owners of 20 per centum or more of the frontage immediately in the rear thereof, or by the owners of 20 per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by the 3/4 vote of such legislative body."

As we noted in *Korash,* the question boils down to whether the exercise of charter-authorized right to referendum[1] (initiative in *Korash)* is compatible with the city's zoning-enabling act authority to zone.[2] In *Korash,* the intrinsic failure of initiative practice to adhere to the strict preenactment procedures prescribed in the zoning-enabling act such as public hearing, appointment of a study commission, *etc.,* mandated initiative's disallowance.

Referendum is a different case. The zoning-enabling act's procedural steps have already been followed with respect to the amendatory zoning ordinance prior to the point in time when referendum becomes available. The aim of referendum is retention of the status quo existing prior to legislative adoption of the amendatory zoning ordinance. The status quo was, again, achieved through compliance with the statutory zoning enactment procedures. As a result, referendum's aim of retention of the status quo does not conflict with the zoning-enabling act's aim of guaranteeing certain procedural steps prior to the passage of *new* zoning legislation.

The Legislature has recognized that the role of referendum is an important one in our democratic society. Where there is no contrary statutory compulsion, we will not infringe upon the Legislature's provision for that procedure.

Thus we join the majority of jurisdictions allowing referendum in this context. *Fort Collins v Dooney,* — Colo —; 496 P2d 316 (1972); *Johnston v City of Claremont,* 49 Cal 2d 826; 323 P2d 71 (1958); *Meridian Development Co v Edison Twp,* 91 NJ Super 310; 220 A2d 121 (1966); *State, ex rel*

[1] City of Portage Charter § 5.8 grants the right of initiative or referendum on "any ordinance".

[2] This question with respect to referendum was specifically reserved in *Korash,* 388 Mich 737, 744–745, fn 4.

*Hunzicker, v Pulliam,* 168 Okla 632; 37 P2d 417;
96 ALR 1294 (1934); *Hilltop Realty, Inc v South
Euclid,* 110 Ohio App 535; 164 NE2d 180 (1960);
*Dwyer v City Council of the City of Berkeley,* 200
Cal 505; 253 P 932 (1927); *O'Loane v O'Rourke,*
231 Cal App 2d 774; 42 Cal Rptr 283 (1965).

Because there is no statutory conflict with the
provisions of the zoning-enabling act, we hold that
the charter-established right to referendum as
authorized by the home-rule act is valid. Plaintiffs
therefore had a legal right in the instant case to
petition for referendary proceedings. The Court of
Appeals is reversed on this point.

## III — THE REFERENDARY PETITION

Plaintiff's petition for referendum requested the
Commission to repeal an amendatory zoning ordi-
nance, or, if they did not do that, to place it on
referendum. In addition, the petition requested
passage of a new and different amendatory zoning
ordinance, or, if they did not do that, to place it on
initiative.

The purpose of such petition was to request the
city to repeal an amendatory zoning ordinance and
substitute a new and different one for it, or to put
the whole matter up for public vote.

The City Commission actually neither repealed
its own amendatory ordinance nor passed the one
petitioned for. Nor was any action taken to give a
referendum and initiative to the people.

As a matter of fact, the petition for referendum
and initiative would put the city clerk in a di-
lemma. To attempt to satisfy the petition he would
be required to frame a proposition asking the
voter whether the voter wished to vote for or
against repealing the Commission-passed amenda-

tory zoning ordinance and passing the petitioned-
for substitute amendatory zoning ordinance. But
as we have already recognized, the second half of
the petition requests an initiative which was held
illegal in *Korash.* The city clerk would therefore
be faced with a proposition that was half legal and
half illegal.

Obviously the clerk could not put a half illegal
proposition to the people. Nor could he attempt to
reform the proposition for two reasons. First, he
has no legislated authority to reform a petition but
merely to perform the ministerial act of accepting
or rejecting the propositions to be put to the
people. Second, assuming the clerk had the power
to reform a petition for voter action, he would not
in this instance be able to accurately reflect the
intention of the petition signers to reform it. It
would be impossible to know whether the signers
of the petition would or would not have signed,
had they known they could not vote on the com-
bined referendum and initiative but only on the
referendum, as the initiative is illegal. In other
words some or all of the signers might not care to
repeal the proposed amendatory ordinance unless
the initiative ordinance was substituted for it.

We conclude that the city clerk could not le-
gally, on the basis of the instant petition, put the
requested referendum to the people.

## IV —CONCLUSION

We hold that passage of an amendatory zoning
ordinance in a home-rule city is subject to charter-
established right to referendum. The Court of
Appeals is reversed on this point.

We further hold, for reasons enumerated in
Section III, *supra,* that the instant referendary

petition was invalid. As a result, we affirm the Court of Appeals' disposition, *i.e.,* affirmance of the trial court summary judgment in favor of appellees.

Reversed in part; affirmed in part; disposition affirmed.

Costs to appellees.

T. M. KAVANAGH, C. J., and SWAINSON, J., concurred with WILLIAMS, J.