B. P. A. II v HARRISON TOWNSHIP

1. ESTOPPEL—ESTOPPEL BY ACQUIESCENCE—INACTION.

The doctrine of estoppel by acquiescence presupposes that the party against whom the doctrine is asserted was guilty of inaction.

2. ESTOPPEL—ESTOPPEL BY ACQUIESCENCE—APPEAL AND ERROR—CLEARLY ERRONEOUS FINDINGS.

A finding by a trial court that a plaintiff was guilty of inaction and therefore subject to application of the doctrine of estoppel by acquiescence is tested on appeal by consideration of whether the trial court's finding was clearly erroneous.

3. APPEAL AND ERROR—FINDINGS OF COURT—CLEARLY ERRONEOUS FINDINGS.

A finding of a trial court is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

4. TOWNS—TOWNSHIPS—ORDINANCES—SEWER FEES—RETROACTIVE APPLICATION.

A township's sewer tap-in fee surcharge may not be charged to a developer of an apartment complex who obtained a permit for the sewer connections prior to the establishment of the surcharge where the township ordinance regarding tap-in fees provides that the fee becomes due and owing at the time of obtaining the permit; although the developer had no vested right in the prior fee schedule, he had relied upon those projected costs in making his financing arrangements.

Appeal from Macomb, George R. Deneweth, J.

REFERENCES FOR POINTS IN HEADNOTES
[1] 28 Am Jur 2d, Estoppel and Waiver § 53.
[2, 3] 28 Am Jur 2d, Estoppel and Waiver § 153.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 574.

Submitted December 16, 1976, at Detroit. (Docket
No. 25212.) Decided March 1, 1977. Leave to ap-
peal applied for.

Complaint by B.P.A. II and Brittany Park Apart-
ments, co-partnerships, against Harrison Township
for mandamus to compel the township to issue
occupancy permits for plaintiffs' apartment com-
plex. Judgment for defendant. Plaintiffs appeal
and defendant cross-appeals as to the amount of
sewer tap-in fees allowed. Reversed.

*Hyman & Rice* (by *Thomas J. Beale),* for plain-
tiffs.

*Ross, Bruff & Henriksen,* for defendant.

Before: R. M. MAHER, P. J., and V. J. BRENNAN
and N. J. KAUFMAN, JJ.

V. J. BRENNAN, J. On January 1, 1972, plaintiffs
B.P.A. II and Brittany Park Apartments, its prede-
cessor Building Project [hereafter B.P.A. I] sued to
obtain mandamus against defendant Harrison
Township in Macomb County Circuit Court. Plain-
tiffs prayed defendant be compelled to issue occu-
pancy permits alleged to be wrongfully withheld
by defendant's township board incident to a dis-
pute over payment of township ordinance cost
increases voted for water and sewer tap charges
affecting plaintiffs' B.P.A. II building venture. By
stipulation dated August 9, 1973, occupancy per-
mits were ordered issued upon condition plaintiffs
file proper security bond in the matter. On Janu-
ary 1, 1974, trial was held on plaintiffs' claim that
the cost increase assessed against them was in-
valid. Judgment was entered against plaintiffs
B.P.A. II and Brittany Park Apartments for $36,-
850. This appeal is of right.

The facts upon which this suit is based are clear enough. B.P.A. I and B.P.A. II are separate Michigan co-partnerships with some partners involved in both ventures. They undertook to construct an apartment complex within Harrison Township. Phase one of construction by B.P.A. I was completed in the summer of 1971 and approval occupancy permits were issued November 16, 1971. At that time, all units in the project had been connected to defendant township's water and sewer systems. However, by an agreement the trial court later found *ultra vires,* township officials and plaintiff B.P.A. I agreed to pay for B.P.A. I water and sewer tap charges not when permit for such connection was obtained but in deferred monthly installments of $7,120.

B.P.A. II began construction of phase two apartments in September, 1971. This phase of construction called for 190 units, requiring 193 water and sewer taps. At the point B.P.A. II applied for connection, water tap charges by Harrison Township were $100 and sewer tap charges were $375. All parties knew that Harrison Township had sewer facilities available to property owners in the area of plaintiff's property, south of the Clinton River spillway, only by agreement with Clinton Township.

Further, by Harrison Township ordinance, charges for water and sewer taps could be modified from time to time by the township board without resort to the annual *ad valorem* tax levy requirement by vote of the electorate. On the evening of December 13, 1971, the township board adopted a resolution increasing sewer tap charges by $275 due to an increase of charges for use by Harrison Township of Clinton Township's waste disposal plant. A brief moratorium on all sewer connec-

tions was in effect from October 21, 1971 to March 27, 1972.

A building permit had been issued October 6, 1971, covering all phase two construction activity. On October 8, 1971, the township had given B.P.A. II a letter certifying that water and sewer facilities were available. The letter included the projected fees for phase two totalling $95,850. On October 12, 1971, B.P.A. II drew a check payable to defendant in the amount of $91,925. The back of the check bore the following notation: "Bond $100 Capital Water Charge $19,300, Sewer Tap Charge $72,375, Inspection Charge $155. Total—$91,925." A note with the check asked the township not to cash the check for 30 days. The township accepted the check and the building permit was issued contingent on the validity of the check.

However, charges of $69,880 were still owing by B.P.A. I for phase one water and sewer connections. On October 20, 1971, the township controller wrote to B.P.A. II to inform the partnership that the check sent by them would be applied to the outstanding phase one charges of B.P.A. I, applying any balance against prospective phase two charges of B.P.A. II. Mr. Morton Scholnick, general partner of B.P.A. II, telephoned the controller to object. However, subsequent to this conversation, Mr. Scholnick wrote the controller and advised him to deposit the check immediately. The trial court found that this action by Mr. Scholnick constituted consent and acquiesence to the application of B.P.A. II funds to the obligation of B.P.A. I. The check was not deposited until the day the resolution raising charges was passed.

Nothing was done between December 13, 1971, and approximately March, 1972. At that point, the township informed B.P.A. II that the additional

$275 surcharge would apply to some of the phase two sewer taps. In September, 1972, B.P.A. I made final payments on their charges. On September 12, 1972, the township notified B.P.A. II that the surcharge of $275 was due and owing to all its units. When B.P.A. II refused to pay, the township withheld occupancy approval on all phase two units. This lawsuit was then commenced.

The trial court found that B.P.A. II was relieved from paying the surcharge on phase two sewer taps which could be covered by the balance of the check submitted on October 12, 1971, prior to the resolution of December 13, 1971. On computation, the court determined that 134 phase two sewer taps were then subject to the surcharge, thus accounting for the $36,850 judgment against B.P.A. II. On appeal, we will discuss relevant questions raised by the parties.

Plaintiffs argue that the trial court was clearly in error in finding B.P.A. II consented to application of their check for $91,925, dated October 12, 1971, to the outstanding obligation of B.P.A. I. We do not agree.

What the trial court found, and what defendant argues, is that plaintiffs are estopped by their silence from asserting that B.P.A. II did not want its check applied to the debt still owing from B.P.A. I. Judge Deneweth reasoned that the cause for Mr. Scholnick's seeming lack of concern was that no one knew then that capital charges would be raised by $275.

The doctrine of estoppel by acquiesence presupposes that the party against whom the doctrine is asserted was guilty of inaction. Sufficient physical evidence existed to support the conclusion that a person of reasonable intelligence would have acted when he received the township's letter of October

2, 1971, stating B.P.A. II funds would be applied to the B.P.A. I obligation. *Green v Millman Brothers, Inc,* 7 Mich App 450, 457–458; 151 NW2d 860 (1967). Further, plaintiff's letter of November 2, 1971, clearly indicates that B.P.A. II was in no disagreement with the letter of October 2, 1971, given their request there for "immediate deposit of our check".

We test such cases by whether the trial court's finding was clearly erroneous. A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed". *Tuttle v Department of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), citing *United States v United States Gypsum Co,* 333 US 364, 395; 68 S Ct 525, 542; 92 L Ed 746, 766 (1948). On the full record, we have no such firm and definite conviction of error and so decline to reverse on this basis.

Plaintiffs next contend that they had a vested right to sewer taps at the pre-surcharge price. Though we find no *vested* right here, we cannot help believing defendant could not justifiably add the surcharge to plaintiffs' sewer tap charge.

Resolution of this question depends primarily upon the Harrison Township ordinance.[1] According

---

[1] The ordinance, originally adopted May 13, 1968, and revised subsequently, reads in pertinent part as follows:

"RATES

"*Section 5.* From and after the date of adoption of this ordinance and pursuant to the authorization provided by law, particularly Act 94, Public Acts of Michigan, 1933, as amended, *the service charges and rates to users and beneficiaries of the combined system shall be prescribed from time to time by the Township Board.* Such rates and charges shall initially be as follows: (Emphasis added.)

"*WATER RATES AND CHARGES*

"(1) *Consumption Rates* (measured by water meters)

"First 1,500 cubic feet of water used per quarter—$5.40 per quarter

to its provisions "service charges and rates to users and beneficiaries of the combined system shall be prescribed from time to time" by the township board; therefore the surcharge of $275 for sewer taps voted on December 13, 1971 appears entirely regular. However, B.P.A. II argues the additional connection cost to phase two sewer taps was an impermissible retroactive charge as applied to them where they reasonably relied on the lower pre-surcharge fees.

Plaintiffs find support for this position in *Metro Homes, Inc v City of Warren,* 19 Mich App 664; 173 NW2d 230 (1969). In *Metro Homes,* this Court found an attempt to cure an ordinance earlier declared constitutionally invalid when the city simply attempted to extend their prior improperly

---

"Said charged shall be the minimum quarterly consumption rate to each user.
"For all water used in excess of 1,500 cubic feet per quarter at 34 cents per 100 cubic feet of water used.

"(2) *Water Tap Charge*
  "*Each premise connecting to the water lines of the combined system, shall, at the time of obtaining permit for such connection, pay a water tap charge in accordance with the following schedule:* (Emphasis added.)
  "(a) all single family dwelling units (as hereinafter defined)—$100.00

\*   \*   \*

"*SEWER RATES AND CHARGES*

"(1) *Sewer Use Rates* (based upon water use)
  "First 1,500 cubic feet of water used per quarter—$7.50 per quarter
  "Said charge shall be the minimum quarterly sewer use rate to each user.
  "For all water used in excess of 1,500 cubic feet per quarter—47 cents per 100 cubic feet of water used.

"(2) *Sewer Tap Charge*
  "*Each premises connecting to the sewer lines of the combined system, shall, at the time of obtaining permit for such connection,* pay a sewer tap charge in accordance with the following schedule: (Emphasis added.)
  "(a) all single family dwelling units (as hereinafter defined)—$275.00"

imposed sewer tap charges to structures previously exempt. In essence, what happened in *Metro Homes* was that the original ordinance was unacceptable in singling out one class of users for sewer tap charges which others similarly situated would also be using without similar charge. See *Beauty Built Construction Corp v City of Warren,* 375 Mich 229; 134 NW2d 214 (1965). Further, the Court found that extending the retroactive fee to all users in an attempt to correct the earlier unfairness only created greater unfairness by imposing the charge on users previously exempt who had justifiably relied on their exemption at the time connection originally occurred. *Metro Homes, Inc v City of Warren, supra* at 673–674. The Court did note that taps made after the date of enactment of the amended ordinance were not affected by the decision.

We believe this reasoning employed in *Metro Homes* applies here as well. Granted, the surcharge resolution of December 13, 1971, was clearly within the allowance to raise tap charges provided by the original ordinance. Granted further, the surcharge affected all users equally and applied only to prospective users whose connections had not occurred prior to the resolution. As to plaintiffs' initial allegation, we found that they had acquiesced to application of funds submitted by them to charges for phase one justly over-due and owing at that time. Nevertheless, we are basically concerned with a question beyond the resolution of these issues alone—that is, whether the fees as properly amended could be assessed against plaintiffs. We believe they could not.

The ordinance sets the point at which fees become due and owing as " * * * the time of *obtaining permit* for such connection". To be entirely

fair, we believe this lawsuit must be determined in accordance with the following question: Simply put, when did plaintiffs actually obtain permit for connection of sewage facilities? We feel that permit was obtained by the letter of October 8, 1971, some 13 days before the moratorium on sewer installation was declared. We hold that the fees were established at this point and that to allow defendant to charge plaintiffs the higher fees occasioned by the resolution of December 13, 1971 would be a clear violation of the reasoning which invalidated the amended ordinance in *Metro Homes*. The only real position defendant could take would be that any permit for sewer connection was not obtainable so long as any charges were owing. However, we believe such an interpretation could not properly correspond to what plaintiffs should reasonably have been held to believe by defendant's correspondence of October 8, 1971.

We do not hold plaintiffs had any *vested* right in the prior fee schedule. However, we cannot blind ourselves to the unfairness of setting tap fees and then changing them after plaintiffs had relied upon those projected costs in their financing arrangements. See *Metro Homes, Inc v City of Warren, supra* at 673–674.

Therefore, we further note that our decision is not the result of plaintiffs' reliance upon the *ultra vires* act of defendant. See *Parker v West Bloomfield Twp,* 60 Mich App 583, 592; 231 NW2d 424 (1975). We are highly critical of the behavior of both parties in this regard. They both should have known that any agreed payment on deferred basis was totally contrary to the clear directive in the ordinance and extremely unfair to other parties unable to obtain such favored treatment. What we must recognize is merely that the ordinance itself

indicates when rates are fixed and plaintiffs' reliance on this fact cannot be arbitrarily distinguished from what other prospective users in plaintiffs' position might also expect.

Because of our resolution of this question, we find discussion of defendant's cross-appeal unnecessary.

Reversed.