*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAVE OUR DOWNTOWN and ALBERT T. QUICK,

   Plaintiffs-Appellees,

v

CITY OF TRAVERSE CITY,

   Defendant-Appellant,

and

TRAVERSE CITY PLANNING COMMISSION and TRAVERSE CITY CITY COMMISSION,

   Defendants,

and

INNOVO TC HALL, LLC,

   Intervening Defendant-Appellant.

FOR PUBLICATION
October 13, 2022
9:00 a.m.

No. 359536
Grand Traverse Circuit Court
LC No. 21-035862-AW

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

BOONSTRA, J.

Defendants Traverse City (the city) and Innovo TC Hall, LLC (Innovo) appeal by right the trial court's order granting summary disposition under MCR 2.116(I)(2) in favor of plaintiffs Save Our Downtown (SOD) and Albert T. Quick (Quick). The order also denied the city's and Innovo's motions for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10) and granted declaratory and injunctive relief to plaintiffs. We affirm the trial court's grant of summary disposition under MCR 2.116(I)(2) in favor of plaintiffs but reverse the trial court's grant of declaratory and injunctive relief.

-1-

# I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal arises out of a dispute about the effect of a 2016 voter-enacted initiative that amended Traverse City Charter, § 28. The amendment required city planning officials to obtain the approval of a majority of the city's voters through a regular or special election before giving final approval to any proposed construction of a building over 60-feet tall. The dispute arose when city officials gave final approval to a site proposal from Innovo, without first obtaining the approval of the voters.

The city is organized under The Home Rule City Act (HRCA), MCL 117.1 *et seq*., and is governed by a city charter. In 2016, city electors approved Proposition 3, a voter-enacted ballot initiative that resulted in the following amendment to Traverse City Charter, § 28 (the charter amendment):

> It is hereby declared that buildings over 60 feet in height are generally inconsistent with the residential and historical character of Traverse City. Therefore, any proposal for construction of a building with a height above 60 feet, shall not be approved by the City or City Commission, until after the proposal is submitted to and approved by a majority of the City electors at a regular election, or at a special election.

In February 2021, the city's planning commission sought input from the city attorney about a site plan proposed by Innovo. Specifically, the commission asked whether it could approve a building when parts of that building exceeded 60 feet in height. The city attorney replied in a memorandum that the implementation policy for the charter amendment stated that "building height will be measured using the methods in the [zoning ordinance]." The city attorney quoted the ordinance's definition of "height of a building" as "the vertical distance from the grade to the highest point on a . . . flat roof . . . ." Acknowledging that the proposed building's staircase tower, elevator penthouse, and parapet wall were higher than 60 feet from the average grade, the city attorney opined that, in accordance with the city's zoning ordinance, these items were not measured as part of the building's height. The planning commission gave final approval to the Innovo site plan the following month.

Three months later, plaintiffs filed a complaint alleging the violation of the city charter (and the resulting denial of voting rights), and seeking declaratory and injunctive relief. The essence of their claim was that the "plain meaning" of the charter amendment required the subject building's "add-on structures, including elevators, lobby, stairs, a small room for undefined purposes and a screen around the perimeter" to be included in measuring the building's height. With these structures included, the building's height was not 60 feet, as the city and Innovo had represented, but over 76 feet. Plaintiffs asserted that the city's interpretation of Traverse City Charter, § 28, ignored the plain meaning of the section, that " 'sixty feet' mean[t] 'sixty feet' as a matter of law," and that adopting an alternative means of measuring height was contrary to the charter and, therefore, unlawful. Among other forms of relief, plaintiffs asked the trial court for a declaratory judgment that the "plain meaning" of Traverse City Charter, § 28, prohibited "all construction of any part of a building over sixty feet in height, without an affirmative vote of the electors."

In lieu of an answer, the city moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that the charter amendment did not change the method of measuring building height stated in the zoning ordinance and that, given the circumstances that gave rise to Proposition 3,[1] voters would have understood when voting for the proposition that building height would continue to be measured in accordance with the zoning ordinance. In addition, the city pointed out that the implementation policy for the charter amendment contained a provision specifically stating that building height would be measured in accordance with the zoning ordinance and that plaintiffs had endorsed the implementation policy without objecting to the provision. The city also argued that plaintiffs' action was barred by the doctrine of unclean hands.

After Innovo successfully petitioned to intervene in the matter, it filed a brief in support of the city's motion for summary disposition. Innovo raised arguments similar to the city's regarding the method of measuring building height. In addition, Innovo stressed that it had expended substantial time, money, and resources in reliance on the implementation policy's statement that building height would continue to be measured in accordance with the zoning ordinance, and it contended that plaintiffs' action should be dismissed on the basis of laches.

Innovo also moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that, because there was no inherent inconsistency between the zoning ordinance's definition of the height of a building and the charter amendment, the two provisions should be read together, and that, when they were read together, Innovo's proposed building did not exceed 60 feet in height. Innovo argued that the charter amendment had to be interpreted in light of zoning law or it would constitute an impermissible amendment of the city's zoning ordinance. Innovo also argued that plaintiffs lacked standing to challenge Innovo's land-use rights because they were not aggrieved parties and because they had not exhausted their administrative remedies, and that plaintiffs had not established the requirements necessary to obtain the extraordinary remedy of injunctive relief.

In response to the motions for summary disposition, plaintiffs reiterated their arguments about the proper interpretation of the charter amendment, and asserted that the zoning ordinance supported their position when it defined building height as "the vertical distance from the grade to the highest point on a . . . flat roof" because the "highest point on" Innovo's flat-roofed building was over 76 feet. Plaintiffs asserted that they had not endorsed the implementation policy and insisted that the city charter and zoning ordinance could not be read *in pari materia* because they did not serve the same purpose. Plaintiffs also submitted an affidavit from engineer M. Kent Anderson, who attested that, measured in accordance with the zoning ordinance and adopting the description and diagrams provided by Innovo's licensed mechanical engineer, Christopher Miller, the building was over 60-feet tall. According to Miller, the "roof deck" was the "precast concrete plank that is over the occupiable space of the 6th floor." The top of the roof deck was 60 feet above the average grade. However, on top of the roof deck was a roof covering. According to

---

[1] Although plaintiffs and Traverse City give different interpretations of the circumstances that resulted in the voter-enacted ballot initiative that resulted in the charter amendment, the circumstances seem to have involved dissatisfaction with how the city was applying special land use permits for taller buildings.

Anderson's analysis of Miller's description and diagrams, the roof covering extended 2 feet, 2¾ inches above the roof deck, making the height of the building 62 feet, 2¾ inches. Plaintiffs requested summary disposition under MCR 2.116(I)(2) against the city and Innovo.

Ruling from the bench after oral argument on the competing requests for summary disposition, the trial court concluded that plaintiffs had standing because they had alleged that the city's approval of Innovo's proposal deprived them of the right to vote on Innovo's proposed building, as provided for by the charter amendment. The court rejected the argument that plaintiffs had lost their right to challenge the city's actions because they did not object to the implementation policy's provision stating that building height would be measured in accordance with the zoning ordinance. The court reasoned that plaintiffs had an opportunity to object, but not a duty to do so, and that there was no evidence that anyone had relied on the absence of their objection.

Turning to the dispute about the height of the building, the trial court found that even if the height of the proposed building were measured without the rooftop equipment, the height of the building exceeded 60 feet for the reasons stated by Anderson in his affidavit. Therefore, the height of the building triggered the right of the electorate to vote on whether to approve Innovo's proposed building. The court concluded that the charter amendment and the zoning ordinance could not be read *in pari materia* because the documents were of unequal authority. Finding the city charter to be "like the Constitution," the trial court determined that the city charter controlled. The city charter was designed to control the actions of city government and city administration, and the charter amendment was designed to "restrain a perception of city land use decisions" that a majority of city voters did not like. Therefore, to read the charter amendment and the zoning ordinance together would be contrary to the purposes of the amendment. Accordingly, the charter amendment had to be interpreted in accordance with the plain meaning of its terms.

The trial court rejected the idea that the public knew how the city calculated building height and concluded that all of the appurtenances that Innovo proposed putting on top of the building—such as the air conditioner unit, the elevator shaft, and the parapet wall—"were all part of the building; and, therefore count[ed] against the 60-foot limit." The trial court issued an order denying the city's and Innovo's motions for summary disposition and granting summary disposition in favor of plaintiffs under MCR 2.116(I)(2). The trial court declared that building height was to be measured "from the grade to the highest point on top of the building structure, including rooftop equipment, elevator towers or components, atriums, parapet and screening walls, stairwells, fixtures, HVAC, mechanical or other equipment, structures or installations or any other fixture or appurtenance that may be attached to the structure." The court also enjoined the city and its officials from "approving any proposal to construct a building with a height above 60 feet as measured herein, without first placing the proposal on the ballot and receiving the approval of the electors as required by Section 28." The court also declared the city's previous approval of Innovo's project invalid and enjoined Innovo from "from constructing a building over 60 feet in height as measured herein within the City of Traverse City, unless and until the proposed building is placed on the ballot and receives the approval of the electors as required by Section 28." This appeal followed.

## II. INTERPRETATION OF THE CHARTER AMENDMENT

The city and Innovo argue that the trial court erred by adopting plaintiffs' interpretation of the charter amendment and by giving precedence to their interpretation over the method of measuring building height stated in the zoning ordinance. We agree.

We review de novo a trial court's decision on a motion for summary disposition. *Sherry v East Suburban Football League*, 292 Mich App 23, 34; 807 NW2d 859 (2011). A trial court's interpretation of a municipal charter is a question of law we review de novo. *Barrow v Detroit Election Comm*, 305 Mich App 649, 663; 854 NW2d 489 (2014).

When reviewing provisions of a home rule city charter, this Court applies the same rules that it applies to statutory construction. "The provisions are to be read in context, with the plain and ordinary meaning given to every word. Judicial construction is not permitted when the language is clear and unambiguous. Courts apply unambiguous statutes as written." *Id*. (quotation marks and citation omitted). Nothing may be read "into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). "Initiative provisions are liberally construed to effectuate their purposes and facilitate rather than hamper the exercise of reserved rights by the people." *Welch Foods, Inc v Attorney Gen*, 213 Mich App 459, 461; 540 NW2d 693 (1995). "The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *Id*. This Court presumes that the voters intended the meaning plainly expressed in the initiative. *Id*.

At issue is whether appurtenances, such as air conditioning units, elevator shafts, and parapet walls, that are attached to the top of a flat roof building are included when calculating the building's height. The city and Innovo argue that Traverse City Zoning Ordinance, § 1320.07(g), governs how the city measures building height across all the city's zones and that the charter amendment did not change that. Plaintiffs argue that the question may be resolved by resorting to the plain language of the charter amendment, as well as to caselaw interpreting what constitutes a building. We agree with the city and Innovo.

Record evidence establishes that the method of measuring building height stated in the zoning ordinance excludes rooftop equipment such as air conditioning units, elevator shafts, and parapet walls from the measurement. Traverse City Zoning Ordinance, § 1320.07(g), provides in relevant part: "*Height of building* means the vertical distance from the grade to the highest point on a . . . flat roof . . . . (See Figure 1-3, attached)." Figure 1-3 depicts different types of roofs, none with appurtenances, and shows that the height of a building with a flat roof is measured from the average grade at the bottom of the building to the ledge of the flat roof. The city also submitted an affidavit from Shawn Winter, Traverse City's planning director, in which he attested that the city had consistently measured building height in accordance with the zoning ordinance. Included in Winter's affidavit was a table that listed nine buildings, the maximum height allowed each building under the zoning ordinance, the actual height of the building, the heights of appurtenances, and the date of approval; four of the buildings were approved after passage of Proposition 3. The table showed that, on all but one building that was approved in 2005, each building had an elevator shaft and a parapet wall and that the height of these appurtenances

exceeded the maximum height allowed for the building.[2]  The appurtenances were not included in any building's height measurement.

The zoning ordinance and Winter's affidavit established that the city customarily did not include rooftop appurtenances in calculation of a building's height.  The policy adopted to implement the requirements of the charter amendment indicated that building height would continue to be measured in accordance with the zoning ordinance.  Section 3(a) of the policy stated that "[f]or purposes of determining whether the Charter provision is triggered by a proposed building with a height above 60 feet, the methods of measuring building height contained in the Traverse City Zoning Ordinances shall be applied."

Plaintiffs agree that height should be measured in accordance with the zoning ordinance. They point out, however, that the drawing of the flat roof in Figure 1-3 does not depict any attachments to that roof top or any fixtures built above the roof line, so measuring to the roof ledge was the only option.  This argument assumes that if the drawing of the building with the flat top roof had depicted an air conditioner unit or elevator shaft extending above the roof, the building's height would have been measured to the top of the air conditioning unit or elevator shaft.  It seems at least likely, however, that a zoning ordinance illustration purporting to show how to measure the height of a building would have included all components pertinent to that measurement, such as rooftop equipment.  The record evidence simply does not support plaintiffs' argument that the zoning ordinance supports their preferred method of measuring a building's height.

Plaintiffs also argue that passage of Proposition 3 effectuated a change in how buildings should be measured.  We disagree.  As already indicated, the charter amendment states in relevant part that "any proposal for construction of a building with a height above 60 feet, shall not be approved by the City or City Commission, until after the proposal is submitted to and approved by a majority of the City electors . . . ."  It is undisputed that the amendment does not expressly address how to measure the height of a building.  Plaintiffs argue that "building" and "60 feet" and "height" are not mysterious concepts or concepts difficult to understand.  Plaintiffs first use a dictionary to arrive at the "plain and ordinary meaning" of "building" as "a usu. roofed and walled structure built for permanent use (as for a dwelling)." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 162; see *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015) (indicating that courts may use a dictionary to ascertain a word's common meaning).  Then, however, plaintiffs resort to caselaw to argue that "building" includes the building itself and "anything that is annexed to the realty and is intended to be a permanent accession to the realty."

Plaintiffs also refer this Court to *Fane v Detroit Library Comm*, 465 Mich 68; 631 NW2d 678 (2001), a consolidated case that required the Michigan Supreme Court to determine whether attachments that allowed access to a building were considered part of the building for purposes of the public building exception to governmental immunity.  The question in *Fane* was whether the elevated terrace by which a patron gained access to the main building of the Detroit Public Library was part of the building.  *Id*. at 71-72.  The question in the companion case was whether a portable ramp placed at the doorstep of a building owned by the University of Michigan was part of that

---

[2] The 2005 building had only an elevator shaft, but its height exceeded the maximum height allowed for the building.

building. *Id*. at 72-73. The Court concluded that, because the terrace was "physically connected to and not intended to be removed from the library," that it was "part of the building within the meaning of the public building exception." *Id*. at 79, 81. As to the portable ramp, the Court concluded that it was not part of the university-owned building because its removal would not impair the value of the building or the ramp, and there was no evidence that the ramp "was intended as a permanent accession to the building." *Id*. at 80, 81.

In our view, *Fane* does not resolve whether equipment and appurtenances on the top of a flat-roofed building are included in the calculation of the building's height. How to measure the height of a public building, or whether building parts outside of the building's walls would be included in that measurement, was not at issue in *Fane*. The issue was whether the library and the university-owned building "possess[ed]" the items in question. *Id*. at 77. Although the elevated terrace belonged to the library, whether it would have been included in calculating the size of the library building simply was not at issue. Similarly, assuming that the equipment and attachments on top of the building at issue belong to and are part of the building does not necessarily mean that they are to be included in calculating the height of the building,[3] particularly when the zoning ordinance that describes how the city has previously measured building height does not include such items in the height calculation. See *Macenas v Michiana*, 433 Mich 380, 398; 446 NW2d 102 (1989) (observing that a "reviewing court is to give deference to a municipality's interpretation of its own ordinance," particularly, in cases of ambiguity, when "a construction has been applied over an extended period by the officer or agency charged with its admission").

Assuming that the charter amendment implies a method of measuring buildings that differs from that stated in the zoning ordinance, plaintiffs argue that the city charter controls because it is tantamount to Traverse City's constitution and, therefore, possesses greater authority. Even if we agreed with plaintiffs' interpretation of the charter amendment and the existence of a conflict between the zoning ordinance and the charter amendment, which we do not, we would necessarily have to disagree with plaintiffs' assertion that the conflict must be resolved in favor of the city charter because of its superior authority. Although plaintiffs alleged in their complaint that the charter amendment invalidated certain zoning ordinances, they insist that the aim of the charter amendment was not to amend the zoning ordinance. Nevertheless, the practical effect of plaintiffs' argument is just that: amendment of the zoning ordinance's method of measuring building height. However, to the extent that the charter amendment purported to change the zoning ordinance's method of measuring the height of a building, the charter amendment would be invalid. An initiative that purports to enact or amend a zoning ordinance is invalid unless it complied with the procedural requirements found in the Michigan zoning enabling act (MZEA), MCL 125.3101 *et seq*. See MCL 125.3202(1) ("Amendments or supplements to the zoning ordinance shall be adopted in the same manner as provided under this act for the adoption of the original ordinance."); see also *Korash v Livonia*, 388 Mich 737, 738; 202 NW2d 803 (1972) (holding that the Legislature intended to authorize home rule cities to enact zoning ordinances by legislation only, not by voter

---

[3] For example, a chimney or exhaust pipe extending above the roof of a house may be part of the house, but it seems doubtful that homeowners would instinctively view either object as adding extra footage to the height of their house.

initiative). Plaintiffs do not claim that the voter-enacted ballot initiative that resulted in the charter amendment complied with the procedural requirements of the MZEA.

We presume that the voters intended the meaning plainly expressed in the initiative, and judicial construction is not permitted absent language that is unclear or ambiguous. See *Barrow*, 305 Mich App at 663; *Welch Foods, Inc*, 213 Mich App at 461. In the present case, there was no finding of ambiguity, and no plausible argument that "building" should not be accorded anything other than its plain and ordinary meaning of a "roofed and walled structure built for permanent use." Even if it could be said that voters intended "building" to be accorded something other than its plain and ordinary meaning for purposes of the charter amendment, whatever method of measuring building height that the charter amendment established could not displace the method stated in the zoning ordinance unless the voter-enacted ballot initiative that resulted in the charter amendment complied with the procedural requirements of MZEA. We conclude, therefore, that the trial court erred by granting declaratory and injunctive relief in favor of plaintiffs on the basis of its findings that the charter amendment stated a method of measuring building height that differed from, and took precedence over, the method stated in the zoning ordinance, and we reverse those portions of the trial court's order that granted declaratory judgment and injunctive relief in favor of plaintiffs. However, as we will discuss in the following section, the trial court nonetheless did not err by granting summary disposition to plaintiffs, in light of Anderson's affidavit.

## III. SUMMARY DISPOSITION

Innovo also argues that the trial court erred when it granted summary disposition in favor of plaintiffs because the parties' competing affidavits created genuine issues of material fact. We disagree.

The trial court granted summary disposition in favor of plaintiffs under MCR 2.116(I)(2). Summary disposition under MCR 2.116(I)(2) is appropriate "when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Sherry*, 292 Mich App at 34. The existence of a genuine issue of material fact precludes summary disposition under MCR 2.116(I)(2). See *Ferndale v Florence Cement Co*, 269 Mich App 452, 462; 712 NW2d 522 (2006). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Southfield Ed Assn v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 361-362; 909 NW2d 1 (2017) (quotation marks and citation omitted).

Our review does not reveal the existence of a genuine issue of material fact that would have precluded summary disposition in favor of plaintiffs. There was no factual dispute that the proposed building measured 60 feet in height from the average grade to the top of the roof deck, and there was no dispute that on top of the roof deck lay an insulating "roof covering." According to his affidavit, Anderson used Miller's description and diagram of Innovo's proposed building to calculate the thickness of the roof covering at 2 feet, 2¾ inches. Innovo did not dispute that the roof covering was "in excess of the roof deck," but argued that the "roof deck is the measured point" and that "the way that the City has measured buildings in accordance with their zoning ordinance is to the top of the average grade of the roof deck." Although Innovo's attorney was not prepared to agree that Anderson's calculation was correct or to commit to an exact thickness of

the insulating material on top of the roof deck, there was no dispute that the insulating material lay in excess of 60 feet above the average grade.

Innovo argues that a factual dispute was created by its engineer's attestation that he met all Traverse City's zoning requirements and Anderson's attestation that the building exceeded 60 feet in height, even without the appurtenances. We disagree. Miller's statement that he met all of the city's zoning requirements was a statement about the legal effect of the facts; it did not dispute the facts themselves. When "the facts relating to a particular use are not in dispute, the legal effect of those facts, that is, how the terms of the [zoning] ordinance are to be interpreted in relation to the facts, is a matter of law . . . ." *Macenas*, 433 Mich at 395 (quotation marks and citation omitted). The trial court in the present case interpreted the zoning ordinance in relation to the undisputed facts. The zoning ordinance does not define "roof," and the trial court apparently construed the phrase, "highest point on a . . . flat roof," in Traverse City Zoning Ordinance, § 1320.07(g), to include the roof covering. This analysis comports with the plain language of the zoning ordinance; neither the city or Innovo have provided a compelling argument as to why "16 additional inches of insulation, plus a waterproof covering . . . plus 6 inches of low-profile green roof system or roof pavers" that covers the entirety of the roof deck in question should *not* be considered part of the roof itself. In the absence of a factual dispute that the building exceeded 60 feet in height as measured in accordance with the zoning ordinance, Innovo has not established that the trial court erred when it granted summary disposition in favor of plaintiffs.

## IV. UNCLEAN HANDS

The city also argues that the trial court erred by not dismissing plaintiffs' request for declaratory and injunctive under a theory of unclean hands or estoppel by acquiescence. We disagree.

This Court reviews de novo a trial court's equitable decisions, and it reviews the trial court's findings of fact in support of its decision for clear error. *Yankee Springs Twp v Fox*, 264 Mich App 604, 611; 692 NW2d 728, 733 (2004). A finding is clearly erroneous when, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

Declaratory and injunctive relief are equitable remedies. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008); *Terlecki v Stewart*, 278 Mich App 644, 663; 754 NW2d 899 (2008). "A party seeking the aid of equity must come in with clean hands." *McFerren v B&B Inv Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002). "The unclean-hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . ." *New Prod Corp v Harbor Shores BHBT Land Dev, LLC*, 331 Mich App 614, 627; 953 NW2d 476 (2019) (quotation marks and citation omitted). "Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief." *Id*. "The doctrine of estoppel by acquiescence presupposes that the party against whom the doctrine is asserted was guilty of inaction." *BPA II v Harrison Twp*, 73 Mich App 731, 735; 252 NW2d 546 (1977).

In this case, a working group drafted an implementation policy that addressed issues raised by the new charter amendment. Among the provisions of the policy was that building height would

be measured in accordance with the method contained in Traverse City's zoning ordinance. The implementation policy was discussed at city commission meetings held on April 3, 2017, and on April 24, 2017. The city commission received numerous written comments on the proposed implementation policy, none of which raised objections to measuring the height of buildings in accordance with the zoning ordinance.

The city asserts that plaintiffs do not come to court with clean hands because they endorsed the implementation policy without objecting to its provision that building height would be measured according to the zoning ordinance. But the city does not explain why the earlier approval of the implementation policy in general should estop or prevent plaintiffs from bringing claims based on the alleged violation of height requirement by a particular building. Although during the proceedings below plaintiffs offered a different interpretation of the implementation policy than that put forth by the city, there is no dispute that the they argued, and the trial court found, that the building in question also violated the charter amendment even when measured according to the zoning ordinance. Given these circumstances, the city was not entitled to dismissal of plaintiffs' request for declaratory and injunctive under theories of unclean hands or estoppel by acquiescence.

## V. STANDING

Innovo argues that the trial court erred by concluding that plaintiffs had standing to challenge Innovo's land-use right. We disagree with that characterization of the trial court's holding. The trial court determined that this was a case about voting rights and concluded that plaintiffs had standing to pursue their complaint for declaratory and injunctive relief. We agree. "Whether a party has standing presents a question of law that this Court reviews de novo." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014).

Under Michigan law,

a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010) (*LSEA*).]

Plaintiffs' complaint sufficiently pleaded a voting rights case and not a zoning case, although it affected zoning issues. Plaintiffs have a substantial interest in enforcing the voting provisions of the city charter under which they live. Quick had standing to protect his individual right to vote, and SOD had standing through its members. See *Trout Unlimited Muskegon-White River Chapter*, 195 Mich App 343, 348; 489 NW2d 188 (1992) (indicating that a nonprofit corporation may advocate its members' interests when "the members themselves have a sufficient stake or have sufficiently adverse and real interests in the matter being litigated").

Innovo argues that the trial court erred by viewing this as a case about voting rights rather than about zoning or land use. We disagree. It is true that briefing and oral argument pertained primarily to how to measure the height of a building, a matter addressed by the zoning ordinance. However, plaintiffs' request for a declaratory judgment that the "plain meaning" of Traverse City Charter, § 28, "prohibits any and all construction of any part of any building over sixty feet in height, without an affirmative vote of the electors" demonstrated that plaintiffs' initial purpose was to obtain a favorable interpretation of the charter amendment. Although this case may have involved a zoning issue, the relief that plaintiffs sought—an interpretation of the charter amendment regarding how building height is measured that differed from that of the zoning ordinance—could not be obtained in a zoning case. Further, plaintiffs assumed for purposes of their complaint that the charter amendment supported their preferred method of measuring a building and invalidated ordinances to the contrary. Therefore, the city denied plaintiffs their right to vote on the subject building when it gave final approval to Innovo's building without holding the election required by the charter amendment.

Innovo also argues that if this is a voting rights case, the trial court erred nevertheless because plaintiffs "failed to show a specific and distinct harm different from that of the public at large." We disagree. In *LSEA*, our Supreme Court held that the teachers and teacher organizations that brought suit to enforce a statute that provided for the expulsion of students who physically assaulted a teacher had a substantial interest "that [would] be detrimentally affected in a manner different from the citizenry at large" because "[t]he members of the general public might never be in a school, and, even for those who are, an assault on those members would not necessarily lead to the expulsion of the assaultive student." *LSEA*, 487 Mich at 373, 374. Analogously, although plaintiffs' substantial interest in the enforcement of their voting rights might not be detrimentally affected in a manner different from other residents of the city, they arguably would be detrimentally affected in a manner different from the general public, members of which do not live in the home rule city of Traverse City and are not subject to the city charter.

## VI. CONCLUSION

We affirm the trial court's grant of summary disposition to plaintiffs under MCR 2.116(I)(2) on the ground that no genuine issue of material face existed regarding whether the height of the proposed building exceeded the height limitation of the charter amendment. We reverse, however, the trial court's grant of declaratory and injunctive relief, including its interpretation of the charter amendment as providing for a different method of building measurement than that provided by the zoning ordinance.

Affirmed in part and reversed in part. Neither party having prevailed in full, no costs may be awarded. MCR 7.219(A)(1).

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ David H. Sawyer

-11-