*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF FARMINGTON, CITY OF SOUTH LYON, CITY OF SYLVAN LAKE, and CITY OF WIXOM,

      Plaintiffs/Counterdefendants-
      Appellees,

v

FARMINGTON SURVEY COMMITTEE, SOUTH LYON SURVEY COMMITTEE, SYLVAN LAKE SURVEY COMMITTEE, and WIXOM SURVEY COMMITTEE,

      Defendants/Counterplaintiffs-
      Appellants,
and

MEAGAN BACHMAN, LISA DEATON, DENNISE DRYDEN, and CRYSTAL OPALKO,

      Counterdefendants-Appellees.

FOR PUBLICATION
September 3, 2024
1:10 p.m.

No. 372022
Oakland Circuit Court
LC No. 2024-208698-CZ

Before: RICK, P.J., and M. J. KELLEY and MARIANI, JJ.

RICK, P.J.

In this election matter, the question presented is whether a home rule city may, through a voter-initiated petition, amend its city charter to establish a local regulatory and licensing scheme for adult-use, recreational marijuana retail establishments under the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*. The trial court concluded that MRTMA precluded the electorate from amending their charter, through a voter initiative, to include such a regulatory scheme. The trial court entered a judgment in favor of plaintiffs and denied defendants' request for writ of mandamus and declaratory relief. Defendants now appeal to this Court as of right. We affirm.

## I.  FACTS AND PROCEDURAL HISTORY

The four cities in this case are all home rule cities with charters approved in accordance with the Home Rule City Act (HRCA), MCL 117.1 *et seq.*  Relying on the HRCA, defendants sought to include proposed charter amendments on the ballot regarding adult-use marijuana retail facilities in each of the respective cities.  Briefly summarized, the proposed charter amendments would establish an application process, selection criteria, licenses, licensing fees, and various regulations for two adult-use, recreational marijuana establishments.  Regulations would include, for example, restrictions such as no facilities in residential zoning areas and a buffer zone from schools.  The city council would retain some authority to enact additional regulations, but the proposed amendments contain provisions that the city council could not enact.  For example, the city council could not prohibit drive-thru windows or home-delivery services.  More generally, the proposed amendments would also provide that marijuana retail facilities must "deemed to be of equivalent legal character to other retail businesses permitted in the city."

The petitions were timely submitted to the respective city clerks in June 2024, and the petitions contained the requisite number of signatures to meet the threshold for placement on the ballot.  However, the respective city clerks refused to certify the petitions.  They provided several reasons for refusing certification, including, most relevant to the issues on appeal, that the proposed charter amendments were preempted by MRTMA.[1]

After the city clerks rejected the petitions, the cities filed suit against defendants in Oakland Circuit Court, seeking a declaratory judgment to confirm that the petitions were lawfully rejected.  The cities also moved for a preliminary injunction to enjoin the proposed charter amendments from appearing on the general election ballots in November 2024.  Defendants answered and filed counterclaims against the cities and the city clerks.  Defendants sought declaratory relief, injunctive relief, and writ of mandamus to compel the city clerks to certify the petitions and otherwise ensure that the proposed charter amendments are placed on the November ballots.

On August 8, 2024, the trial court issued a written opinion and order, concluding that the cities were entitled to judgment as a matter of law under MCR 2.116(I)(1).  The trial court entered a declaratory judgment that the petitions were "ineligible to appear on the November 5, 2024 general election ballot," and the trial court denied the cities' request for injunctive relief as moot.  The trial court also denied defendants' request for writ of mandamus and injunctive relief and dismissed defendants' counterclaims with prejudice.

---

[1] Additional reasons for the rejections included (1) failure to include information regarding congressional districts, (2) impermissible inclusion of zoning provisions, (3) failure to include a true and impartial statement of the purpose of the amendment, (4) failure to set forth current charter provisions that would be altered by the amendment, (5) failure to provide multiple questions as required when the amendment includes more than one subject, and (6) attempting a charter revision without following the procedures for a charter revision.  Given our resolution of this case under MRTMA, we find it unnecessary to address these other issues, and we offer no opinion on the city clerk's decisions in this regard.

Substantively, the trial court concluded that the petitions exceeded the permissible scope of MRTMA and that MRTMA impliedly preempted charter amendments related to recreational marijuana retail establishments, such as those proposed in defendants' petitions. Specifically, analyzing MCL 333.27956(1), the trial court concluded that MRTMA only allowed voter initiatives by the electorate to enact an ordinance setting the number of retail establishments or prohibiting retail marijuana establishments altogether. Otherwise, the trial court reasoned that MRTMA reserved the power of local regulation over marijuana establishments for municipalities through their legislative process. Consequently, the trial court concluded that the petitions did not comply with MRTMA and that defendants lacked a clear legal right to have their proposals to be placed on the ballot. This appeal followed.

## II. ANALYSIS

On appeal, defendants argue that the trial court erred by concluding that MRTMA precluded charter amendments permitted by the Michigan Constitution and the HRCA.[2] Defendants assert that conflict preemption does not apply because, while MRTMA allows municipalities to adopt certain ordinances, it does not limit the constitutional right of the electorate to amend the charter and to dictate how city government may exercise the municipality's authority. Defendants contend that field preemption is also inapplicable. According to defendants, they are entitled to mandamus and declaratory relief to compel the city clerks to certify their petitions for inclusion on the November 2024 ballot.

## A. BURDEN OF PROOF & STANDARDS OF REVIEW

Whether to grant mandamus relief is within the discretion of the court. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). Mandamus is an extraordinary remedy, the purpose of which is "enforce duties the law created under circumstances in which the law has not created a specific remedy, and justice requires one." *Comm for Marshall-Not the Megasite v Marshall*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369603); slip op at 9. Mandamus may be an appropriate remedy for a party seeking to compel action by election officials. *Attorney General v Bd Of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016) (quotation marks and citation omitted). See also MCL 117.25(7).

---

[2] As a threshold matter, we note that the question whether regulations under MRTMA are a proper subject for a voter-initiated charter amendment is an issue that we can address before an election. That is, while substantive challenges to a proposed initiative should be considered after the local law is enacted, there are instances when preelection review is warranted to determine whether the petition meets the constitutional and statutory requirements for placement on the ballot. See *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 371-372; 820 NW2d 208 (2012); *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 291; 761 NW2d 210 (2008), aff'd in result only by 482 Mich 960 (2008). Stated differently, although this Court will not consider potential substantive conflicts before an election, this Court will consider the broader question whether "a matter is a proper subject for an initiative." *Detroit v Detroit City Clerk*, 98 Mich App 136, 139; 296 NW2d 207 (1980).

To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. [*Berry*, 316 Mich App at 41 (quotation marks and citation omitted).]

"A clear legal right is a right clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Comm for Marshall-Not the Megasite*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id*.

"Declaratory relief is also equitable in nature, and a remedy best left to the discretion of the court." *Davis v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362841); slip op at 9. Questions of law, including issues of statutory interpretation or constitutional law, are reviewed de novo. *Lansing v Angavine Holding*, LLC, 339 Mich App 210, 217; 981 NW2d 372 (2021). Likewise, whether a local regulation is preempted by state law poses a question of law, which we review de novo. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014).

## B. HOME RULE CITIES

The cities in this case are home rule cities. Under Michigan's Constitution, home rule cities generally enjoy "broad power and authority." *Adams Outdoor Advertising, Inc v Holland*, 234 Mich App 681, 687; 600 NW2d 339 (1999), aff'd 463 Mich 675 (2001). Particularly relevant to this case, under Const 1963, art 7, § 22, electors of a city have the power and authority to amend the city charter as follows:

> *Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village.* Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [Emphasis added.]

Const 1963, art 7, § 34, provides: "The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor."

Reading these provisions together, our Supreme Court has explained that the home-rule system in Michigan is "one of general grant of rights and powers, subject only to certain enumerated restrictions instead of the earlier method [prior to the 1908 Constitution] of granting enumerated rights and powers definitely specified." *Detroit v Walker*, 445 Mich 682, 690; 520

NW2d 135 (1994). "[I]t is clear that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied. Home rule cities are empowered to form for themselves a plan of government suited to their unique needs and, upon local matters, exercise the treasured right of self-governance." *Id*.

The HRCA was enacted to implement the constitutional power afforded to home-rule cities. *Rental Prop Owners Ass'n of Kent County v Grand Rapids*, 455 Mich 246, 254; 566 NW2d 514 (1997). It was intended to afford cities a "large measure of home rule," and "[i]t grants general rights and powers subject to enumerated restrictions." *Id*. When interpreting the HRCA, the Act must be read "against the backdrop of Article 7, §§ 22 and 34 of the 1963 Constitution," bearing in mind that "statutory and constitutional provisions concerning cities should be liberally construed in their favor." *Sheffield v Detroit City Clerk*, 508 Mich 851, 852-853 (2021).

Under the HRCA, subject to certain requirements, an amendment to an existing city charter may be proposed by an initiatory petition. See MCL 117.21(1). The HRCA provides certain mandatory provisions that must be contained in a charter. See MCL 117.3. It also lists permissible charter provisions that "a city may, if it desires, include in its charter." *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 67 n 13; 214 NW2d 803 (1974). Among the list of permissible charter provisions is "the regulation of trades, occupations, and amusements within city boundaries, if the regulations are not inconsistent with state or federal law, and the prohibition of trades, occupations, and amusements that are detrimental to the health, morals, or welfare of the inhabitants of that city." MCL 117.4i(d). Permissible charter provisions also include those regarding municipal powers, allowing charter provisions to provide:

> For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state. [MCL 117.4j(3).]

More generally, a home rule city "may place in its charter, by amendment duly adopted, any provision for its government or regulation of municipal affairs deemed advisable and not in contravention of the general statutory regulation and provision of the Constitution." *Winter v Shafter*, 317 Mich 259, 266; 26 NW2d 893 (1947) (quotation marks and citation omitted).

The powers of home rule cities are not, however, without limits. *Dooley v Detroit*, 370 Mich 194, 210; 121 NW2d 724 (1963). "Generally, local governments may control and regulate matters of *local concern* when such power is conferred by the state." *DeRuiter v Twp of Byron*, 505 Mich 130, 140; 949 NW2d 91 (2020) (emphasis added). Moreover, local regulation may be preempted by the state, which "the state can do expressly or by implication—and in that latter case either because the local regulation directly conflicts with state law or because the state has occupied the entire field of regulation in a certain area." *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, 502 Mich 695, 702; 918 NW2d 756 (2018). See also *People v Llewellyn*, 401 Mich 314, 321-322; 257 NW2d 902 (1977). "No provision of any city charter shall conflict with or contravene the provisions of any general law of the state." MCL 117.36.

Even if not completely preempting local control, the state may choose to limit local regulation, in which case local regulation is permissible only within certain parameters. See, e.g., *Gmoser's Septic Serv, LLC v E Bay Charter Twp*, 299 Mich App 504, 514-515; 831 NW2d 881 (2013) (concluding that Legislature did not preempt local regulation of septage disposal but instead allowed local governments to institute stricter requirements by ordinance than those set forth by statute). The state may also choose to restrict how or by whom local control may be exercised. See *Korash v Livonia*, 388 Mich 737, 742, 745-746; 202 NW2d 803 (1972); see also 2 McQuillin, Municipal Corporations (3d ed.), § 4:10 (recognizing that the Legislature should be able to "determine whether particular subject matter and provisions of individual measures are too complex for the general voter" and to, therefore, delegate authority to a legislative city body rather than the local electorate). In *Korash*, for example, the Court construed the HRCA together with the former Zoning Enabling Act, MCL 125.581 *et seq.*, to conclude that the Legislature intended to allow zoning only by local legislative action and not by voter-initiated ordinances.[3] *Korash*, 388 Mich at 738, 742, 745-746. More generally, for the purpose of establishing a uniform method throughout the state, the "Legislature may pass a general act directly conferring upon legislative bodies of cities, having home-rule charters, powers in addition to those enumerated in the charter." *City of Hazel Park v Muni Fin Comm*, 317 Mich 582, 602; 27 NW2d 106 (1947) (quotation marks and citations omitted). See also *Bivens v Grand Rapids*, 443 Mich 391, 401 n 12; 505 NW2d 239 (1993); *Dawley v Collingwood*, 242 Mich 247, 249-250; 218 NW 766 (1928). When the state vests authority in a local body, that authority may not be abrogated by charter provisions. See *Bostedor v Eaton Rapids*, 273 Mich 426, 429; 263 NW 416 (1935) (involving authority vested in local library boards).

## C. MUNICIPAL AUTHORITY UNDER MRTMA

Against this home-rule backdrop, and bearing in mind that "statutory and constitutional provisions concerning cities should be liberally construed in their favor," *Sheffield*, 508 Mich at 852-853, the question before us becomes whether recreational marijuana retail facilities may be regulated through voter-initiated charter amendments or whether this is an impermissible subject for a voter-initiated charter amendment in light of the provisions in MRTMA.

This question is primarily one of statutory interpretation, which begins with the language of the statute. *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016). "Whether enacted by our Legislature in the normal course or the people directly via the initiative process, this Court must give effect to the plain, ordinary, or generally accepted meaning of the statute's terms." *Yellow Tail Ventures, Inc v City of Berkley*, 344 Mich App 689, 700; 1 NW3d 860 (2022) (quotation marks and citation omitted). Clear and unambiguous statutory language must be enforced as written. *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 520; 902 NW2d 430 (2017).

MRTMA is a voter-initiated law that, generally speaking, "decriminalizes the possession and use of marijuana for persons 21 years of age or older and provides for the legal production and

---

[3] In a footnote, the Court noted, however, that there is no constitutional right to a voter-initiated ordinance. *Korash*, 388 Mich at 742 n 3.

sale of marijuana." *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 153; 975 NW2d 52 (2021). The purpose of the act is as follows:

> The purpose of this act is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older; remove the commercial production and distribution of marihuana from the illicit market; prevent revenue generated from commerce in marihuana from going to criminal enterprises or gangs; prevent the distribution of marihuana to persons under 21 years of age; prevent the diversion of marihuana to illicit markets; ensure the safety of marihuana and marihuana-infused products; and ensure security of marihuana establishments. To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section. [MCL 333.27952.]

To this end, notwithstanding any other law, MRTMA sets forth acts related to marijuana that are permissible for individuals 21 years of age or older. See MCL 333.27955. It also details permissive acts for marijuana establishments. See MCL 333.27960. Conversely, MRTMA sets forth conduct that does not fall within the scope of MRTMA—such as driving under the influence of marijuana or giving marijuana to those under the age of 21—which is, therefore, not permitted. See MCL 333.27954(1). It also details prohibited conduct for marijuana establishments, see MCL 333.27961, and it contains prohibitions on transferring marijuana to a minor or someone who is visibly intoxicated, see MCL 333.27961a. MRTMA also contains provisions allowing employers to develop workplace drug policies and allowing property owners to, within certain limits, regulate marijuana on their own property. See MCL 333.27954(3), (4).

The implementation of MRTMA is entrusted to the cannabis regulatory agency (CRA), which was given "the powers and duties necessary to control the commercial production and distribution of marihuana." MCL 333.27957(1). The CRA's authority includes—indeed requires—promulgating rules to implement and administer MRTMA, including rules regarding state licenses, fee schedules, requirements and standards for safe cultivation and testing, security requirements for businesses, recordkeeping requirements, advertising restrictions, certain penalties, and informational pamphlet standards regarding safety information related to marijuana. See MCL 333.27958(1). In its discretion, the CRA may also promulgate rules for the issuance of additional types or classes or state licenses, regulation of hemp, and other topics. See MCL 333.27958(2). Although given broad rulemaking authority, the CRA is precluded from establishing certain types of rules; the CRA may not, for example, limit the number of state licenses that may be granted. See MCL 333.27958(3).

In addition to rulemaking authority, the CRA has the power and duty to grant or deny applications, investigate establishments and ensure establishments' compliance with MRTMA and the CRA's rules, take disciplinary action, hold hearings to receive public complaints, collect licensing fees and fines, and submit an annual report to the governor. See MCL 333.27957(1). MRTMA provides an application process for state licenses. See MCL 333.27959. MRTMA also

contains taxation provisions to tax recreational marijuana establishments and marijuana sales; these taxes are to be administered by the department of treasury. See MCL 333.27963.

In short, MRTMA is a comprehensive scheme governing the regulation of recreational marijuana use and recreational marijuana facilities in Michigan. Moreover, the power and duty to administer MRTMA, and to make rules to implement the act, was assigned to the CRA. *Brightmoore Gardens*, 337 Mich App at 172.

In this state-dominated area of recreational marijuana regulation, MRTMA carved out limited powers for local regulation. Specifically, central to the issues in this case is MCL 333.27956, which states:

> 1. Except as provided [MCL 333.27954[4]], a municipality may completely prohibit or limit the number of marihuana establishments within its boundaries. Individuals may petition to initiate an ordinance to provide for the number of marihuana establishments allowed within a municipality or to completely prohibit marihuana establishments within a municipality, and such ordinance shall be submitted to the electors of the municipality at the next regular election when a petition is signed by qualified electors in the municipality in a number greater than 5% of the votes cast for governor by qualified electors in the municipality at the last gubernatorial election. A petition under this subsection is subject to section 488 of the Michigan election law, 1954 PA 116, MCL 168.488.
>
> 2. A municipality may adopt other ordinances that are not unreasonably impracticable and do not conflict with this act or with any rule promulgated pursuant to this act and that:
>
> (a) establish reasonable restrictions on public signs related to marihuana establishments;
>
> (b) regulate the time, place, and manner of operation of marihuana establishments and of the production, manufacture, sale, or display of marihuana accessories;
>
> (c) authorize the sale of marihuana for consumption in designated areas that are not accessible to persons under 21 years of age, or at special events in limited areas and for a limited time; and
>
> (d) designate a violation of the ordinance and provide for a penalty for that violation by a marihuana establishment, provided that such violation is a civil infraction and such penalty is a civil fine of not more than $500.
>
> 3. A municipality may adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal

---

[4] MCL 333.27954 sets forth the scope of MRTMA, detailing what the act does not authorize.

license, but may not impose qualifications for licensure that conflict with this act or rules promulgated by the department.

> 4. A municipality may charge an annual fee of not more than $5,000 to defray application, administrative, and enforcement costs associated with the operation of the marihuana establishment in the municipality.

> 5. A municipality may not adopt an ordinance that restricts the transportation of marihuana through the municipality or prohibits a marihuana grower, a marihuana processor, and a marihuana retailer from operating within a single facility or from operating at a location shared with a marihuana facility operating pursuant to the medical marihuana facilities licensing act, 2016 PA 281, MCL 333.27101 to 333.27801.

By statute, the term "municipality" is defined for purposes of MRTMA to mean "a city, village, or township." MCL 333.27953(v).

The trial court concluded that MCL 333.27956 preempted the proposed local charter amendments and that the proposals should, therefore, not appear on the ballot. With regard to preemption, MRTMA contains no express preemption provision. See *Mich Gun Owners, Inc*, 502 Mich at 702. As to implied preemption, given that MCL 333.27956 provides for limited local decision-making and regulation of recreational marijuana establishments, MRTMA was also clearly not intended to preempt this legislative field. See *id*. at 705. That is, field preemption will not be implied when "an unambiguous statute shows a legislative intent *not* to occupy the field." *Id*. Instead, MRTMA permits local regulations within certain set parameters, and to honor that intent, local regulation must be permitted within those parameters. See *Gmoser's Septic Serv, LLC*, 299 Mich App at 514-515. At the same time, local regulation cannot exceed the scope of regulation permitted by MCL 333.27956.

Considering the parameters of local regulation permitted under MCL 333.27956, we agree with the trial court's conclusion that voter-initiated charter amendments are not a permissible method of implementing local regulations authorized by MRTMA. As written, the statute plainly distinguishes between "municipalities" and "individuals," and the statute clearly affords different authority to municipalities as compared to individuals. The statute permits voter-initiated action by individuals in only one instance. That is, individuals may petition for *an ordinance* to completely prohibit or set the number of marijuana retail establishments. This is the *only* voter-initiated power given to individuals with regard to the local regulation of marijuana, and a petition that exceeds this authority should not be placed on the ballot.[5]

---

[5] Indeed, in prior election cases, panels of this Court have concluded that there was no clear legal right to have an initiative under MRTMA placed on the ballot when the petition sought an ordinance that encompassed more than providing for the number of marijuana establishments. See, e.g., *Jobs for Farmington v Mary Mullison*, unpublished order of the Court of Appeals, entered September 9, 2020 (Docket No. 354743).

Notably, in contrast to the narrow authority provided to individuals, MCL 333.27956 otherwise vests municipalities with the authority to regulate, via ordinance, various issues related to local marijuana retail establishments under MCL 333.27956(2)-(5). Under MRTMA, municipalities may limit or prohibit marijuana retail establishments, and unlike individuals, they may also adopt ordinances relating to licensing, impose time, place, and manner restrictions, and regulate signage, etc. Stated differently, the statute unambiguously differentiates between voter-initiated action by individuals and ordinances enacted by the municipality. Given this differentiation, it is clear that the provisions allowing for regulation via ordinance by the municipality are a reference to the municipality's action through its legislative body as opposed to voter-initiated action by individuals in the electorate.

In other words, the power to adopt a local regulatory scheme for marijuana retail establishments under MCL 333.27956 involves a delegation of authority to the legislative body of the municipality. Because this authority is to be exercised by the legislative body, it cannot be exercised by individuals of the electorate. Instead, as discussed, individuals of the electorate are afforded one narrow power of initiative: to seek an ordinance prohibiting or setting the number of marijuana retail establishments. In this manner, MCL 333.27956 governs the process by which municipalities may regulate marijuana retail establishments, and these specific provisions of MRTMA control over the more general and otherwise applicable provisions of the HRCA. See *American Axle & Mfg, Inc v Hamtramck*, 461 Mich 352, 365; 604 NW2d 330 (2000). As a result, aside from petitions to prohibit or set the number of establishments via ordinance, a voter-initiated petition cannot be used to abrogate the authority vested in the municipality to regulate marijuana establishments through legislative enactment of ordinances, and voter-initiated petitions cannot be used to enact regulations regarding marijuana establishments.

In contrast to this conclusion, defendants argue on appeal that, because the words "city charter" do not appear in MCL 333.27956, the statute is silent on this topic and it must, therefore, be assumed that individuals may, by voter-initiated petition, amend the city charter to enact a local regulatory scheme governing marijuana retail establishments. Contrary to this argument, as discussed, the statute speaks clearly on the division of local power between "individuals" and the "municipality" to regulate marijuana retail establishments. Individuals, as members of the electorate, have limited powers to pursue a voter-initiated petition for an ordinance prohibiting or limiting the number of establishments. Otherwise, the authority to regulate rests with the municipality though the enactment of ordinances by its legislative body. In this manner, the statute creates a comprehensive system for limited local regulation, and it also establishes a uniform method—applicable to cities, townships, and villages—for local governments to implement their respective regulatory systems. In this comprehensive system for local regulation regarding marijuana establishments, individuals' voter-initiated authority is restricted, and it does not include charter amendments to enact provisions that may only be enacted via the legislative process.

Consequently, defendants do not have a clear legal right to certification of their petitions for placement on the November 2024 ballot, and the city clerks did not violate a clear legal duty to certify the petitions. The trial court did not err by denying defendants' requests for mandamus and declaratory relief, and the trial court did not err by instead entering judgment for the cities.

Affirmed. No costs under MCR 7.219 because an issue of public interest is involved.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Philip P. Mariani